QUINN EMANUEL URQUHART & SULLIVAN, LLP
Kristin N. Tahler (Bar No. 261908)
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone:  (213) 443-3000
kristintahler@quinnemanuel.com

*Attorneys for Respondent iRhythm Technologies, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | Civil Action No.: 3:24-cv-03967-AMO |
| Petitioner, | **RESPONDENT'S OPPOSITION TO PETITION FOR ORDER TO SHOW CAUSE AND APPLICATION FOR ENFORCEMENT OF ADMINISTRATIVE SUBPOENA** |
| v. | |
| IRHYTHM TECHNOLOGIES, INC., | |
| Respondent. | |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND ................................................................................ 2

    A.    As a Manufacturer of Heart Monitoring Devices, iRhythm Must Comply with Applicable Medical Device Manufacturing Regulations ............................... 2

    B.    iRhythm's Counsel Hired ███████████ in Anticipation of Litigation ................... 3

    C.    ███████ Role as a Senior Regulatory Affairs Specialist Dictated Her Involvement with the Consultant Reports .............................................................................. 4

    D.    Government Subpoena and Privilege Dispute ............................................... 5

III.    LEGAL STANDARD ........................................................................................... 8

    A.    Burden ........................................................................................................... 8

    B.    Attorney Work Product ................................................................................. 9

    C.    Attorney Client Privilege ............................................................................ 10

IV.     ARGUMENT ...................................................................................................... 10

    A.    The Consultant Reports are Protected Attorney Work Product and Immune From Disclosure ................................................................................................ 11

        1.   iRhythm's Counsel Directed the Commission of ███████ to Evaluate the Seriousness and Veracity of Potential Whistleblower Claims ..................... 11

        2.   The ████████ and ████████ Stemmed from ████████ ....... 12

    B.    iRhythm Has Not Waived Work Product Protection over the Consultant Reports  13

        1.   Disclosure to External Recipients Did Not Waive Work Product Protection Because iRhythm Reasonably Expected Such External Recipients to Maintain the Confidentiality of the Consultant Reports ............................................................. 13

        2.   Disclosure to ███████ Did Not Waive Work Product Protection ............................. 14

    C.    The Government Has No Substantial Need for the Consultant Reports .................. 16

    D.    The Government Failed to Properly Challenge iRhythm's Privilege Assertions over the Additional Documents Cited in the Government's Petition .................................. 17

    E.    All Additional Emails and Documents Cited in the Government's Petition are Privileged and Immune from Disclosure ......................................................... 18

        1.   Documents Reflecting the Content of the Consultant Reports are Protected From Disclosure by the Work Product Doctrine ................................................. 18

        2.   Documents Related to the Consultant Reports that Reflect the Provision of, Requests for, or Facilitate Legal Advice are also Protected by the Attorney-Client Privilege ........ 19

        3.   Documents Unrelated to the Consultant Reports are Privileged and Immune from Disclosure ................................................................................................. 19

V.      CONCLUSION .................................................................................................. 20

1

**TABLE OF AUTHORITIES**

2

<u>Cases</u>

3

*Anderson v. Seaworld Parks and Entm't, Inc.*,
    329 F.R.D. 628 (N.D. Cal. 2019) ............................................................................18

4

5

*Apple Inc. v. Samsung Elecs. Co.*,
    306 F.R.D. 234 (N.D. Cal. 2015) .............................................................................8

6

7

*U.S. ex rel. Bagley v. TRW, Inc.*,
    212 F.R.D. 554 (C.D. Cal. 2003) ...........................................................................15

8

9

*Bickler v. Senior Lifestyle Corp.*,
    266 F.R.D. 379 (D. Ariz. 2010) .............................................................................12

10

*California Earthquake Authority v. Metropolitan West Securities, LLC*,
    285 F.R.D. 585 (E.D. Cal. 2012) .............................................................................9

11

12

*Campagnolo S.R.L. v. Full Speed Ahead, Inc.*,
    CASE NO. C08-1372 RSM, 2010 WL 11527271 (W.D. Wash. Apr. 27, 2010).......... 9, 13, 14

13

*E.E.O.C. v. Safeway Store, Inc.*,
    No. C-00-3155 TEH(EMC), 2002 WL 31947153 (N.D. Cal. Sept. 16, 2002).......................12

14

15

*Erhart v. BofI Holding, Inc.*,
    612 F. Supp. 3d 1062 (S.D. Cal. 2020) ....................................................................15

16

17

*In re Grand Jury Investigation*,
    974 F.2d 1068 (9th Cir. 1992) ...........................................................................8, 9, 17

18

*In re Grand Jury Subpoena (Mark Torf/Torf Environmental Management)*,
    357 F.3d 900 (9th Cir. 2004) .........................................................................9, 11, 12, 13

19

20

*Hickman v. Taylor*,
    329 U.S. 495 (1947) ................................................................................................11

21

22

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*,
    229 F.R.D. 441 (S.D.N.Y. 2004) ..............................................................................9

23

*Odyssey Wireless, Inc. v. Samsung Elecs. Co., Ltd*,
    No. 315CV01735HRBB, 2016 WL 7665898 (S.D. Cal. Sept. 20, 2016)...........................9, 14

24

25

*Parneros v. Barnes & Noble, Inc.*,
    332 F.R.D. 482 (S.D.N.Y. 2019) ............................................................................12

26

27

*In re Telescopes Antitrust Litig.*,
    Case No. 20-CV-03639-EJD (VKD), 2024 WL 1016070 (N.D. Cal. Feb. 13, 2024)....................................................................................................... 8, 10, 17

28

i

*Tides v. The Boeing Co.*,
    644 F.3d 809 (9th Cir. 2011) ................................................................. 14

*Todd v. STAAR Surgical Co.*,
    CV1405263MWFRZX, 2015 WL 13388227 (C.D. Cal. Aug. 21, 2015) ................................ 10

*United States v. California Inst. Of Tech.*,
    No. CV185964CASRAOX, 2020 WL 13547790 (C.D. Cal. Nov. 18, 2020) ......................... 16

*United States v. Kovel*,
    296 F.2d 918 (2nd Cir. 1961) ................................................................. 10

*United States v. Nobles*,
    422 U.S. 225 (1975) ................................................................. 11

*United States v. Sanmina Corp.*,
    968 F.3d 1107 (9th Cir. 2020) ................................................................. 10, 13

*Zucchella v. Olympusat, Inc.*,
    Case No. CV-19-7335-DSF, 2021 WL 8317026 (C.D. Cal. Oct. 5, 2021) ........................... 19

## Statutes

18 U.S.C. § 1514A ................................................................. 15

## Federal Rules and Regulations

21 C.F.R. Part 820 ................................................................. 2, 3

29 C.F.R. § 1980.102 ................................................................. 15

Fed. R. Civ. P. 26(b) ................................................................. 10, 12, 16

## Other Authorities

Am. Bar Ass'n Model Rules Pro. Conduct, Rule 1.6 ................................................................. 14

Inst. Internal Audit Rules of Conduct, Rule 3 ................................................................. 14

*Compilation of Federal Whistleblower Protection Statutes*, CONGRESSIONAL
    RESEARCH SERVICE (Apr. 25, 2024) ................................................................. 16

## I.   **INTRODUCTION**

To date, iRhythm has produced hundreds of thousands of documents in response to the Government's administrative subpoena for documents (the "Subpoena")—and has reviewed millions more. At every turn and to its significant expense, iRhythm has cooperated with the Government in responding to its thirty-two sweeping document requests spanning the last decade. Through it all, iRhythm has protected and substantiated its privilege claims, including through a detailed privilege log that specifies applicable privileges on a document-by-document basis.

Casting aside iRhythm's exhaustive production, the Government now wishes to invade the privilege iRhythm enjoys, seeking to compel documents presently withheld. The tale begins nearly a year ago in September 2023, when the Government raised questions regarding certain documents identified on iRhythm's privilege log. *See* Dkt. No. 1-5. iRhythm, in good faith and in the continued spirit of cooperation, promptly provided the Government with additional information substantiating its privilege claims. Further discussion ensued until the Government abruptly ceased further communication in December 2023.

After an inexplicable six-month silence, the Government emerged in late June claiming it had a "time-sensitive" matter to discuss. iRhythm dutifully responded to the Government's request and a call was hastily convened. There, the Government informed iRhythm that the time sensitivity was the matter it had let lay dormant for months—the privileged documents now at issue. With no explanation of this sudden purported urgency, the Government informed iRhythm that it would proceed with filing a Petition For Order to Show Cause and Application for Enforcement of Administrative Subpoena (the "Petition") unless iRhythm quickly reversed course. iRhythm declined, and the Government rapidly filed the Petition just before the July Fourth Holiday. No explanation was given for the fire drill, which appears manufactured in an effort to damage iRhythm publicly for strategic advantage. The Petition, however tactical, fails substantively and should be denied for the following reasons:

- iRhythm's counsel commissioned the creation of the three reports at the core of the Petition—the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ (collectively, the "Consultant Reports")—in anticipation of litigation;

- • iRhythm did not waive privilege when providing the reports to the sole employee responsible for ███████████████████████████████ ████████;

- • The Government has no substantial need for the Consultant Reports; and

- • Beyond the three Consultant Reports, the Government also seeks to compel hundreds of other privileged documents without providing any basis to justify this invasion.

## II.   FACTUAL BACKGROUND

### A.   As a Manufacturer of Heart Monitoring Devices, iRhythm Must Comply with Applicable Medical Device Manufacturing Regulations

Since 2009, iRhythm has provided cardiac monitoring devices to over six million patients. iRhythm offers three prescription-only monitoring systems: the Zio XT System, the Zio Monitor System, and the Zio AT System. Each system continuously records a patient's heart rhythm over a prescribed time period to capture irregular or abnormal activity, otherwise known as cardiac arrhythmias. Once the prescription period is over, the patient removes the device and sends it back to iRhythm for analysis, which takes place at its Medicare-enrolled independent diagnostic testing facility. iRhythm's proprietary cloud-based algorithm, the Zio ECG Utilization Software ("ZEUS"), analyzes the recorded heart rhythms for arrhythmias, and any findings are reviewed by certified cardiographic technicians for verification.

As a medical device manufacturer, iRhythm is subject to various federal and state medical device regulations, including the Food and Drug Administration's Quality System Regulation ("QSR"). *See generally* 21 C.F.R. Part 820. The QSR sets out a complex regulatory framework of manufacturing practices that medical device manufacturers must meet for commercialized medical devices, including a requirement to establish and follow effective policies, practices, and procedures in the design, development, and manufacture of their devices.

Under the QSR, certain medical device manufacturers, including iRhythm, are required to ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

1 ████████████████████████████████████████████████████████

2 ████████████████████

**B.    iRhythm's Counsel Hired ████████████ in Anticipation of Litigation**

████████████████████, iRhythm received multiple complaints regarding

████████████████████ from its Senior Regulatory Affairs Specialist, ████████

████████████████████████. Declaration of Mark Day

in Support of Respondent's Opposition to Petition for Order to Show Cause and Application for

Enforcement of Administrative Subpoena ("Day Decl."), Ex. 1.[1] As the Senior Regulatory Affairs

Specialist, ████████████████████████████████████████

████████████████████. Day Decl. ¶ 14. ████████ raised her complaints

directly with iRhythm's then in-house counsel, ████████████, along with ████████ boss,

████████████ iRhythm's then-Chief Financial Officer. Day Decl. Ex. 1.

Upon receipt of these complaints, ████████ conducted a preliminary investigation into

████████ claims. *Id.* As part of this investigation, ████████████████, iRhythm's counsel

interviewed ████████ to assess the risk of whistleblower-related litigation. *Id.* ████████

sent additional communications to ████████████████████████████. *Id.* The

tone and subject of these communications implicitly threatened litigation, and iRhythm

consequently began to prepare, viewing ████████ as a potential adverse party. *Id.* iRhythm's counsel

retained Wilson Sonsini Goodrich & Rosati ("WSGR") as outside counsel to advise on appropriate

measures to address potential litigation arising from ████████ complaints. *See* Day Decl. Ex. 2.

To effectively defend against a potential whistleblower-related claim and provide iRhythm

with proper legal advice, iRhythm's counsel needed to first evaluate and better understand

████████ complaints. However, iRhythm's counsel did not specialize in ████████████████

████████ in which ████████ complaints were based. Day Decl. ¶ 3. Because of this, ████████

---

[1]  In addition to the facts and circumstances outlined herein, certain privileged documents and communications provide further information relevant to iRhythm's assertions privilege. Simultaneous with this filing, iRhythm submits these documents for the Court's *in camera* review and consideration in support of its claims.

1   ████████, at the direction of iRhythm's counsel, iRhythm retained ████████ to provide a

2   ████████████████████, which would be utilized by iRhythm's

3   counsel to assess ████████ claims as well as advise on ████████ for consideration by

4   iRhythm in consultation with its counsel. *Id.* at ¶¶ 4, 6. ████████ conducted an audit of

5   ████████████████ and provided its final report to ████████████████

6   "████████████ *Id.* at ¶ 8.

7       Following ████████████████ and at the direction of iRhythm's

8   counsel, iRhythm sought to ████████████████████. *Id.* at ¶ 9. As part of this

9   effort, iRhythm recognized that additional guidance was required to supplement and expand upon

10  █████████████████████████████████████████████.

11  *Id.* at ¶ 10. Thus, as a direct result of ████████████████████ directed

12  by counsel and in further response to ████████ complaints, iRhythm enlisted the expertise of

13  additional outside consultants, ████████████████

14  ████████, to further assess iRhythm's ████████████████. *Id.* at ¶ 11.

15  ████████████████████████████████████████████████

16  ████████████████████████████████████████████████

17  ████████████████████████████████████████████████

18  ████████████████████████████████████████████████

19  ████████████████████████████████████████████████

20  ████████████████████████████████████████████████

21  ████████████████.

22  **C.      ████████      Role as a Senior Regulatory Affairs Specialist Dictated Her
            Involvement with the Consultant Reports**

23      ████████ continued in her role as a Senior Regulatory Affairs Specialist after raising

24  concerns. As a result, iRhythm's counsel needed to advise the company on potential retaliation

25  matters. To do so, iRhythm engaged WSGR to provide advice to guide iRhythm's interactions with

26  ████████ to ensure compliance with whistleblower protection and employment non-retaliation laws.

27  Day Decl. Ex. 2.

28

██████ as the Senior Regulatory Affairs Specialist, was a member of iRhythm's Quality/Regulatory team, which divides its efforts between product quality control and regulatory compliance. Day Decl. ¶ 14. At the time, the "Regulatory" side of the team consisted of ██████ and her supervisor—who was the director of the team at large. *Id.* ██████ ████████████████████████████████████████████████████████████████████, which the "Quality" side of the team then implemented. *Id.* Thus, ██████ was the sole employee at iRhythm fully responsible for ████████████████. *Id.*

Given her role, and her centrality to ████████████, it was necessary for iRhythm to provide ██████ with the Consultant Reports. This enabled ██████ to do her job; in this case, ████████████████████████. iRhythm could not have tasked another employee with the ████████████████ because ██████ was the sole Senior Regulatory Affairs Specialist. *See id*. Had iRhythm withheld the reports, iRhythm's ██████ ██████ would have been rendered ineffective—either without the benefit of ████████████ expertise or without the benefit of the Consultant Report guidance. Critically, had iRhythm excluded ██████ or deprived her of the reports, iRhythm would have been open to claims of retaliation for depriving ██████ of work that she was employed specifically to perform.

### D.    Government Subpoena and Privilege Dispute

On April 4, 2023, iRhythm accepted service of the Subpoena, which included thirty-two expansive document requests for documents spanning the last decade. Declaration of Kristin Tahler in Support of Respondent's Opposition to Petition for Order to Show Cause and Application for Enforcement of Administrative Subpoena ("Tahler Decl.") ¶ 2; Dkt. No. 1-2. iRhythm began producing documents just two months later, on June 7, 2023, following multiple discussions with the Government regarding scope. *Id.* at ¶ 3. To date, iRhythm has produced over 435,000 documents and has reviewed over 2.5 million documents. *Id.* at ¶ 4.

On August 15, 2023, the Government informed iRhythm that a copy of ████████████ ██████ was included in iRhythm's production. *Id.* at ¶ 5. The Government noted specifically "that attorneys at Wilson Sonsini representing iRhythm in connection with another DOJ investigation have previously asserted that this document is privileged." Tahler Decl. Ex. 1. iRhythm promptly



clawed back the inadvertently produced ███████████ and another related document. Dkt. No. 1-3. Thus, iRhythm has consistently maintained its privilege assertion over ███████ ████ as well as over the ██████████ and ████████████. In response to the Government's questions in September 2023 about iRhythm's privilege claims (*see* Dkt. Nos. 1-5 and 1-7), iRhythm provided the government with further information to evaluate iRhythm's privilege claims, including:

- The factual background regarding the commission of ██████████████, individuals involved (including both in-house and outside counsel), and details about the preparation of the reports;

- A list of individuals who received a copy of ████████████ and ████ █████████, along with their title, employer, and the date on which they received a copy;

- A detailed description, with citation to supporting legal authority, of the ample basis for asserting privilege over the Consultant Reports (and related documents);

- Information regarding ████████ and the complaints that precipitated ████████ ████████████ and

- A description of legal counsel's consultation with ████████████ in connection with the commission of ████████████.

*See generally*, Dkt. Nos. 1-6 and 1-8.

Additionally, iRhythm produced (1) non-privileged documents relating to communications from ████████ most relevant to the Company's commission of ████████████████, (2) non-privileged communications between iRhythm and ████████████ relating to the preparation of ██ █████████████, (3) non-privileged documents relating to the nature and terms of the services provided by ████████████ to iRhythm in connection with ████████████████, and (4) non-privileged communications between iRhythm and ████████████ relating to the preparation of ██ █████████████. Tahler Decl. ¶ 7; Dkt. No. 1-8. iRhythm also provided a privilege log for (1) privileged documents and communications regarding complaints that precipitated the Consultant Reports, and (2) privileged documents and communications between iRhythm, on the one hand, and ████████████ and ████████████, on the other. Tahler Decl. ¶ 7; Dkt. No. 1-8.

Despite this, on December 7, 2023, the Government claimed that it could not sufficiently assess iRhythm's privilege assertions. Tahler Decl. ¶ 9. The Government argued that it was not privy

OPPOSITION TO PETITION FOR ORDER TO SHOW CAUSE AND
APPLICATION FOR ENFORCEMENT OF ADMINISTRATIVE SUBPOENA

1    to ████████ complaints that prompted the creation of the Consultant Reports and, therefore, could

2    not determine whether iRhythm's claims of privilege over the reports were appropriate. *Id*. Counsel

3    for iRhythm explained that such complaints were themselves privileged, as they had been shared

4    with in-house counsel for the purpose of obtaining legal advice, but facilitated the Government's

5    understanding by pointing to specific entries on iRhythm's privilege log—which was provided to

6    the Government over a month before—outlining ████████ complaints that led to the commission

7    of the Consultant Reports. *Id*.; Dkt. No. 1-10.

8         On December 29, 2023, the parties reached an impasse as to iRhythm's privilege claims over

9    the Consultant Reports. *Id.* at ¶ 10; Dkt. No. 1-12. Despite informing iRhythm of plans to "call to

10   discuss a briefing schedule for an enforcement action" related to iRhythm's privilege assertions, the

11   Government remained silent *for six months*. Dkt. No. 1-9; Tahler Decl. ¶¶ 8, 11.

12        On June 27, 2024, the Government urgently requested a call to discuss "a time-sensitive

13   matter related to iRhythm." Tahler Decl. ¶ 12. The parties met the next day, and the Government

14   stated that it was "now in a position to litigate" iRhythm's privilege assertions as to the Consultant

15   Reports and related documents.[2] *Id.* at ¶ 13. The Government failed to explain the feigned urgency

16   but advised that it planned to file a petition for an order to show cause and provided iRhythm until

17   3:00 pm Eastern on Monday, July 1, 2024 (less than one business day), to advise the Government

18   as to iRhythm's position with respect to its privilege claims. *Id*. During this call, iRhythm's counsel

19   requested that the Government identify the specific related documents at issue; the Government

20   failed to do so. *Id*. However, the government made a point to state that the motion would be filed

21   publicly. *Id*. Thereafter, iRhythm informed the Government that it intended to maintain its privilege

22   claims, and the Government filed its Petition on July 1, 2024. Only after the filing and as detailed

23   in iRhythm's motion to seal, Dkt. No. 4, did it become clear that the public filing was intentional

24   and done to seek a strategic advantage over iRhythm by placing damaging information in the public

25   _____

26   [2]  The lack of any actual time sensitivity on the part of the Government to resolve this matter is
     shown by the Government's lack of interest in litigating this matter since the filing. Indeed, when
27   iRhythm's counsel reached out to negotiate a briefing schedule, the Government maintained that it
     could not file a reply brief until September, two months after its "time sensitive" filing. Tahler
28   Decl. ¶ 16, Ex. 2.

domain. *Id*. Indeed, the alleged time sensitivity, rather than relating to any legitimate dispute over iRhythm's privilege assertions, instead aligns with the deadline for class action plaintiffs in parallel securities litigation to amend their complaint. *See Glazing Employers & Glaziers' Union Local #27 Pension & Retirement Fund v. iRhythm Technologies, Inc.*, No. 3:24-cv-00706-JSC, Dkt. No. 36, Amended Class Action Complaint for Violations of Federal Securities Laws (N.D. Cal. July 19, 2024) ("Amended Complaint"). The Amended Complaint, which was due on July 19, 2024, shortly after the Petition, not only references the Petition, but also quotes directly from iRhythm's confidential privilege logs that were filed by the Government on the public docket. *See* Amended Complaint at 35–36, 44–45.[3]

## III.   <u>LEGAL STANDARD</u>

### A.   **Burden**

A party asserting privilege meets its burden to establish that privilege applies by providing a privilege log that identifies "(a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated." *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992) (noting that a privilege log is a "means of sufficiently establishing" privilege) (internal citation omitted). A party may also "substantiate a claim of privilege by other means." *In re Telescopes Antitrust Litig.*, Case No. 20-CV-03639-EJD (VKD), 2024 WL 1016070, at *2 (N.D. Cal. Feb. 13, 2024) (citing *Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D. 234, 237 (N.D. Cal. 2015) ("Briefs, declarations or other proof may establish the purpose of the communication or the specific role of the sender and each individual recipient.")).

A party challenging an assertion of privilege must "show a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in

---

[3] iRhythm has moved to redact the information that class action plaintiffs pulled from the Government's Petition. *See Glazing Employers & Glaziers' Union Local #27 Pension & Retirement Fund v. iRhythm Technologies, Inc.*, No. 3:24-cv-00706-JSC, Dkt. No. 36, iRhythm's Administrative Motion to Seal Plaintiffs' Amended Complaint.

the materials is not privileged." *In re Grand Jury Investigation*, 974 F.2d at 1075 (emphasis in original). The district court may only consider *in camera* review of documents withheld for privilege if the challenging party makes such a showing, and, even then, "the decision whether to conduct the review rests within the discretion of the district court." *Id.*

**B.   Attorney Work Product**

Work performed by or for a party in anticipation of litigation is protected as work product. *In re Grand Jury Subpoena (Mark Torf/Torf Environmental Management)*, 357 F.3d 900, 907 (9th Cir. 2004) ("*Torf*"); *California Earthquake Authority v. Metropolitan West Securities, LLC*, 285 F.R.D. 585, 589 (E.D. Cal. 2012) ("The work product doctrine applies to investigators or agents working for attorneys provided that the documents were created in anticipation of litigation."); *Campagnolo S.R.L. v. Full Speed Ahead, Inc.*, CASE NO. C08-1372 RSM, 2010 WL 11527271, *2 (W.D. Wash. Apr. 27, 2010). A document is created in anticipation of litigation if "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *Torf* at 907. "The 'because of' standard does not consider whether the litigation was the primary or secondary purpose for creating the document, but only whether the document would have been created in substantially the same form but for the prospect of litigation." *Campagnolo*, 2010 WL 11527271, at *2.

"Work product protection may be waived when a party discloses protected information to a third party who is not bound to maintain its confidence." *Id.* at *3. "[W]aiver of the work product doctrine requires more than the disclosure of confidential information [to third parties]; 'it requires an act inconsistent with the adversarial system.'" *Id.* (internal citation omitted); *see Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 229 F.R.D. 441, 447–48 (S.D.N.Y. 2004) (finding no waiver of work product protection when report of internal investigation was shared with auditors because auditors did not have a "tangible adversarial relationship" with client and were bound by ethical and professional obligations of confidentiality). If work product is shared with a third party who "must "maintain [the document's] confidence," the protection is not waived. *Campagnolo*, 2010 WL 11527271 at *3; *see Odyssey Wireless, Inc. v. Samsung Elecs. Co., Ltd*, No. 315CV01735HRBB, 2016 WL 7665898, at *6 (S.D. Cal. Sept. 20, 2016) (finding no waiver of work product protection

where "disclosures occurred pursuant to confidentiality agreements and an expectation that the information would remain confidential").

A party may obtain protected work product if and only if "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). Even in such circumstances, the party cannot obtain materials reflecting "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).

**C.    Attorney Client Privilege**

"In the Ninth Circuit, whether information is protected by the attorney-client privilege is determined using an eight-part test: '(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.'" *In re Telescopes Antitrust Litig.*, No. 20-CV-3639, 2024 WL 1016070, at *2 (N.D. Cal. Feb. 13, 2024) (quoting *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020)). "It is well-established that the attorney-client privilege may extend to communications with a third party where that third party has been retained as an agent for the purposes of assisting a lawyer in providing legal advice to a client." *Todd v. STAAR Surgical Co.*, CV1405263MWFRZX, 2015 WL 13388227, at *5 (C.D. Cal. Aug. 21, 2015) (citing *United States v. Kovel*, 296 F.2d 918, 922 (2nd Cir. 1961) (holding that the attorney-client privilege extends to communications made by a client to an accountant in attorney's employ incident to the client's obtaining legal advice from the attorney).

**IV.    <u>ARGUMENT</u>**

Contrary to the Government's protestations, the Consultant Reports are protected attorney work product because they were prepared in anticipation of litigation, and there has **never** been a waiver of such protection. The Government has also failed to demonstrate, and cannot demonstrate, a substantial need for the Consultant Reports. Further, the Petition fails to mount a challenge against the other documents in iRhythm's privilege log because it does not specify or substantiate its

challenge on a document-by-document basis. Nonetheless, the documents included in the Government's excerpts of iRhythm's privilege log are protected by the attorney work product doctrine and/or the attorney-client privilege, as reflected in iRhythm's privilege log.

### A. The Consultant Reports are Protected Attorney Work Product and Immune From Disclosure

The Supreme Court has recognized "that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial." *United States v. Nobles*, 422 U.S. 225, 238–39 (1975) (finding that "[i]t is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself"). In order to advise iRhythm on possible whistleblower-related litigation, iRhythm's counsel needed to understand ████████ complaints in the context of ████████████ ████ at issue. *See Torf*, 357 F.3d at 907; *cf. Hickman v. Taylor*, 329 U.S. 495, 511 (1947) ("Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference."). As explained in the Company's September 29, 2023 and November 3, 2023 correspondence with the Government and further outlined below, the Consultant Reports[4] and documents reflecting the contents of such reports are protected attorney work product because they were prepared in anticipation of litigation arising out of potential whistleblower claims.

### 1. iRhythm's Counsel Directed the Commission of ████████████ to Evaluate the Seriousness and Veracity of Potential Whistleblower Claims

████████████ was engaged at the direction of iRhythm's in-house counsel, ████████, in anticipation of litigation arising from a now-former employee's complaints. Far from a standard compliance audit in the regular course of the Company's business, ████████████ came to be as a result of the prospect of litigation arising from ████████ complaints.

---

[4] Specifically, the following entries from ECF No. 1-4 are copies of the Consultant Reports: Nos. 1, 237–38, 242–43, 255, 262–63, 281, 284, 290–91, 297, 305–08. Moreover, the following entries from ECF No. 1-13 are copies of the Consultant Reports: 1, 237–38, 242–43, 255, 262–63, 281, 284, 377, 379, 2297–99, 2369, 2375–78, 2931.

1    iRhythm identified ████████ as a potential whistleblower and thereafter hired outside

2  counsel to assist and advise in connection with potential litigation. iRhythm consulted with outside

3  counsel and thereafter at the direction of iRhythm's in-house counsel, hired ████████████ to

4  ████████████████████████. ████████████████ was not an ordinary course

5  compliance review and it would not have been created but for the anticipation of litigation. *See*

6  *E.E.O.C. v. Safeway Store, Inc.*, No. C-00-3155 TEH(EMC), 2002 WL 31947153, at *6 (N.D. Cal.

7  Sept. 16, 2002) ("[T]he reports indicate that they were prepared at the request of, and are addressed

8  to . . . counsel of record in the instant case. Having reviewed the reports, it is clear that the reports

9  would not have been created but for the impending litigation and as such, warrant work-product

10  protection."). Given the ████████████████ and in-house counsel's lack of expertise in

11  the area, ████████████████ was necessary for iRhythm's counsel to evaluate and understand

12  ████████ complaints. As such, ████████████████, and materials reflecting its content, are

13  protected work product. *See, e.g.*, *Bickler v. Senior Lifestyle Corp.*, 266 F.R.D. 379, 383 (D. Ariz.

14  2010) (finding investigative reports qualified as protected work product where an employee "talked

15  to corporate counsel twice about the incident, he instructed her to undertake the investigation, and

16  the investigation was more extensive than inquiries routinely made after [other] incidents").

17         2.   ████████████ and ████████████ Stemmed from ████████████████

18    iRhythm commissioned both ████████████████ and ████████████ as a direct

19  result of ████████████████ to further assess iRhythm's ████████████████████

20  ████████████████ that were directed by counsel. The work product doctrine applies to

21  documents created by investigators and agents working for attorneys, and "it is not in fact necessary

22  that the material be prepared by or at the direction of an attorney." *Parneros v. Barnes & Noble,*

23  *Inc.*, 332 F.R.D. 482, 492 (S.D.N.Y. 2019) ("The text of Fed. R. Civ. P. 26(b)(3)(A) accords the

24  protection to material prepared by or for a party or its representative — not merely material prepared

25  by or for an attorney. Thus, the rule affords protection to materials gathered by non-attorneys even

26  where there was no involvement by an attorney." (internal quotations omitted)); *see Torf*, 357 F.3d

27  at 907.

28

Here, both ████████ and ████████ were commissioned to evaluate iRhythm's ████████ to assist agents of iRhythm's counsel in carrying out, at the direction of counsel, ████████████████████████. As with t████ ████, ████████ and ████████ were not standard compliance audits conducted in the regular course of iRhythm's business. Rather, ████████ and ████ ████ were "prepared [for iRhythm]. . . because of the prospect of litigation." *Torf*, 357 F.3d at 907. As such, ████████ and ████████ are protected work product.

**B.    iRhythm Has Not Waived Work Product Protection over the Consultant Reports**

Despite the Government's claim to the contrary, iRhythm ***did not*** waive work product protection by sharing the Consultant Reports with external recipients and ████████ Indeed, every external recipient was bound to keep the Consultant Reports confidential. Additionally, iRhythm's disclosure to ████████ was compelled, given her role and iRhythm's obligations to abide by whistleblower protection regulations.

1.    <u>Disclosure to External Recipients Did Not Waive Work Product Protection Because iRhythm Reasonably Expected Such External Recipients to Maintain the Confidentiality of the Consultant Reports</u>

As an initial matter, iRhythm did not waive attorney work product protection over the Consultant Reports by sharing them with external recipients, including outside counsel, auditors from PwC, and two consultants. iRhythm reasonably expected the external recipients to maintain the confidentiality of the Consultant Reports and the external recipients were not potential adversaries in litigation.[5] *See Sanmina*, 968 F.3d at 1122–23 (finding disclosure to an auditor did not waive work product protection where company had a "reasonable expectation of confidentiality

---

[5]  iRhythm is aware that a Government attorney received a copy of ████████████. However, neither the Company nor its counsel appears to have shared ████████████ with the Department attorney; as such, receipt by the Department does not constitute waiver as iRhythm made no voluntary disclosure. *See* Tahler Dec. ¶ 17–19; *see Campagnolo*, 2010 WL 11527271 at *3 ("[W]ork product protection is not waived unless a *voluntary disclosure* substantially increases the likelihood of an opposing party obtaining the information." (emphasis added)). The Government apparently agreed with this determination, having created a filter team to address issues involving the documents. Tahler Dec. ¶ 17. Moreover, as detailed herein, iRhythm has consistently maintained its position that the Consultant Reports are privileged.

over the [work product]" based on a "confidential relationship with [the auditor]"). Both outside counsel and auditors have professional and ethical obligations to maintain the confidence of materials shared with them to conduct their work. *See* Am. Bar Ass'n Model Rules Pro. Conduct, Rule 1.6; Inst. Internal Audit Rules of Conduct, Rule 3. Additionally, consultants ████████ and ████████ signed binding agreements requiring that they maintain the confidence of non-public Company materials shared with them. Tahler Decl. Exs. 4–5. As such, the Consultant Reports retain work product protection despite distribution to external recipients.

2. <u>Disclosure to ████████ Did Not Waive Work Product Protection</u>

Disclosure of the Consultant Reports to ████████ did not waive work product protection because ████████ too was required to keep the reports confidential in the course of her employment and disclosure was necessary to avoid potential legal exposure relating to retaliation claims. Here, iRhythm's adversary for the purposes of work product protection was a potential whistleblower who maintained her employment after raising complaints about ████████ ████████. Because of this, iRhythm could not realistically withhold the Consultant Reports from ████████ without significant risk of state or federal whistleblower retaliation litigation, because the reports (████████) were central to her position. *See Tides v. The Boeing Co.*, 644 F.3d 809, 816 (9th Cir. 2011) ("[T]he whistleblower provision was intended to protect 'employees of publicly traded companies who report acts of fraud . . . to supervisors or appropriate individuals within their company.'" (internal citation omitted)).

This disclosure is in harmony with the standard for maintaining work product. First, ████████ as an employee, was required to keep Company materials confidential. Tahler Decl. Ex. 3; *see Campagnolo*, 2010 WL 11527271 at *3 (finding work product protection maintained when documents shared with a third party who "must "maintain [the document's] confidence); *see also Odyssey*, 2016 WL 7665898, at *6 (finding no waiver of work product protection where "disclosures occurred pursuant to confidentiality agreements and an expectation that the information would remain confidential"). Second, disclosure was consistent with the adversarial system in that iRhythm was seeking to avoid employment litigation by not retaliating and allowing ████████ to do her job. *Campagnolo*, 2010 WL 11527271 at *3 ("[W]aiver of the work product doctrine requires more than

the disclosure of confidential information [to third parties]; 'it requires an act inconsistent with the adversarial system.'" (internal citation omitted)). If such a disclosure is to be considered waiver, it would result in an irreconcilable conflict between a company's interest in maintaining work product protection and the risk that not sharing such work product with the adversary could subject a company to retaliation claims—allegations that the company took adverse employment action (i.e., froze out the individual) after the employee engaged in protected (whistleblowing) activity. *See* 18 U.S.C. § 1514A (providing that the employer may not "discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment" because of the employee's protected activity); 29 C.F.R. § 1980.102 (defining retaliatory acts to also include "intimidating ..., restraining, coercing, blacklisting or disciplining" the employee); *see also Erhart v. BofI Holding, Inc.*, 612 F. Supp. 3d 1062, 1106–08 (S.D. Cal. 2020) (discussing federal and California state whistleblower protection laws). It also flies in the face of public policy, which encourages employees to raise potential issues and companies to address those issues, sometimes, as here, using the very individual who raised the concern to address the issue. Courts in this circuit have concluded that where, as here, finding waiver would frustrate the purpose of a countervailing policy in a narrow circumstance, waiver is not effectuated. *See U.S. ex rel. Bagley v. TRW, Inc.*, 212 F.R.D. 554, 561 (C.D. Cal. 2003) (finding no waiver where "finding a waiver would frustrate the purposes of the Act because it would penalize the relator for doing what he or she is obliged to do"). Thus, iRhythm sharing the Consultant Reports with ▮▮▮▮▮ when it was necessary to do so to avoid retaliation claims, does not effectuate a waiver.

To be sure, it is not the typical case where providing a privileged report to a complainant is required, as was the case here. Indeed, in the circumstance where an  employee claims she is being harassed by a manager, the company commences a privileged investigation, and a report is prepared, the company would not be similarly compelled to provide the report to the complainant because that individual does not need the report to do her job. Moreover, the company there may  remediate and the employee may continue doing her job *without any need* to share the investigation's findings with the employee and without any risk of additional liability for retaliation. In sharp contrast here, iRhythm would have subjected itself to retaliation claims by ▮▮▮▮▮ had the reports been withheld.

Simply put, the Government's position is untenable. Companies who attempt in good faith to ███████████ raised by potential whistleblowers cannot, and should not, be forced to make a Hobson's choice between waiving work product protection and opening themselves up to claims of retaliation in an ever-broadening landscape of whistleblower protection regulations. *See generally Compilation of Federal Whistleblower Protection Statutes*, CONGRESSIONAL RESEARCH SERVICE (Apr. 25, 2024).[6] In the limited circumstance in which a company, in anticipation of potential whistleblower-related litigation, undertakes a privileged and confidential investigation and ███████ ██████████████████████ at the direction of counsel, the company cannot effectuate a waiver of otherwise protected work product where, as here, the potential whistleblower employee is integral to the job function responsible ████████████ of the alleged misconduct. This is particularly so where a failure to involve the employee █████████ in that scenario may well subject the company to whistleblower retaliation liability.

### C.   The Government Has No Substantial Need for the Consultant Reports

While work product protection may be overcome by a showing of substantial need in limited cases, the Government has failed to advance such an argument here. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii). Indeed, the Government devotes merely a single conclusory sentence in a footnote to "reserve the right to contend" that, should the Court uphold iRhythm's assertion of work product over the Consultant Reports and related documents, it nonetheless has a "substantial need" for such documents. This plainly falls far short of meeting the burden of demonstrating substantial need for the Consultant Reports, and the Government may not grant itself a second bite at the apple to attempt to make such a showing at some future time. Moreover, it is highly unlikely that the Government could even meet such a burden. *See United States v. California Inst. Of Tech*., No. CV185964CASRAOX, 2020 WL 13547790, at *5 (C.D. Cal. Nov. 18, 2020) (rejecting claim of substantial need where party claiming work product had been cooperative in litigation and the party challenging work product had not shown how other forms of discovery would be inadequate). The Government issued a Subpoena with ***thirty-two*** requests—ranging in subject matter from quality

---

[6]   Available at https://crsreports.congress.gov/product/pdf/r/r46979.

OPPOSITION TO PETITION FOR ORDER TO SHOW CAUSE AND
APPLICATION FOR ENFORCEMENT OF ADMINISTRATIVE SUBPOENA

control policies, to scientific studies, to coverage and reimbursement by federal and state healthcare programs, to communications with the FDA—spanning over a decade, and it has received over 435,000 documents to date. The suggestion that the Government reasonably requested and received nearly half a million documents but cannot continue its investigation without three reports concerning a single subject matter that is **not even defined or mentioned in the Subpoena** strains all credulity and instead implies a desired hope for a path of least resistance rather than an actual and substantial need.

### D. The Government Failed to Properly Challenge iRhythm's Privilege Assertions over the Additional Documents Cited in the Government's Petition

iRhythm has met its burden of establishing privilege with respect to the additional documents cited in the Government's Petition by providing the Government with a document-level privilege log. iRhythm's privilege log contains sufficient information about the nature and basis of the privilege claims that iRhythm relied upon in withholding or redacting documents responsive to the Subpoena. *See In re Grand Jury Investigation*, 974 F.2d at 1071 (noting that a privilege log is a "means of sufficiently establishing" privilege). The Government does not challenge the sufficiency of iRhythm's privilege log as a whole (nor could it); it is thus the Government's burden to establish a factual basis to support *in camera* review of the specific documents it seeks to compel iRhythm to produce.

Despite iRhythm's explicit request for identification of the documents at issue, the Government's Petition fails to identify with particularity which documents beyond the three Consultant Reports it deems improperly withheld or redacted. Instead, the Government included approximately 450 privilege log entries across two exhibits—some of which are not even remotely related to the Consultant Reports—and leaves iRhythm (and this Court) to guess which of these entries the Government challenges. This, alone is enough to doom the Government's attempt to compel iRhythm to produce any documents beyond the Consultant Reports. *See In re Telescopes Antitrust Litig.*, 2024 WL 1016070, at *3–4 (finding that Plaintiffs failed to make a sufficient showing for additional *in camera* review where Defendants provided a privilege log and Plaintiffs

"did not mount a document-or entry-specific challenge to Defendants' privilege or work product claims"). Nonetheless, iRhythm has addressed each category of documents below.

**E.      All Additional Emails and Documents Cited in the Government's Petition are Privileged and Immune from Disclosure**

The privilege entries included in Petition Exhibits 3 and 12 are sufficient to satisfy iRhythm's burden to substantiate its privilege claims. Each entry demonstrates that (1) the document reflects the contents of the Consultant Reports and is protected work product, or (2) the document relates to the Consultant Reports and is protected by both the work product doctrine and attorney-client privilege, or (3)  the document is unrelated to the Consultant Reports and protected by the attorney-client privilege, the work product doctrine, or both. Because of this, the Government's attempt to compel these documents should fail.

1.      Documents Reflecting the Content of the Consultant Reports are Protected From Disclosure by the Work Product Doctrine

iRhythm withheld or produced redacted versions of certain documents reflecting the content of the Consultant Reports because such documents are protected work product.[7] Redactions of documents reflecting protected work product are appropriate in the Ninth Circuit. *See Anderson v. Seaworld Parks and Entm't, Inc*., 329 F.R.D. 628, 635 (N.D. Cal. 2019) (disclosure of pre-existing work product to public relations consultant did not waive work product, and the court permitted narrowly tailored redactions to protect such work product). Because the Consultant Reports are protected work product, iRhythm has withheld or placed narrowly tailored redactions to protect portions of additional documents reflecting such work product. The documents withheld (or produced in redacted form) should not be disclosed to the Government.

---

[7]   Specifically, the following documents from ECF No. 1-4 reflect the content of the Consultant Reports:  Nos. 2, 239, 244, 246, 265, 274–80, and 282. Moreover, the following documents from ECF No. 1-13 reflect the content of the Consultant Reports:  Nos. 2, 239, 244, 246, 265, 274–80, 282, 374, 376, 378, 380–85, 443–44, 461–62, 2296, 2368, 2374, and 2930.

2. <u>Documents Related to the Consultant Reports that Reflect the Provision of, Requests for, or Facilitate Legal Advice are also Protected by the Attorney-Client Privilege</u>

iRhythm withheld or redacted documents and communications relating to the Consultant Reports that (1) were not shared with ████ (2) were similarly created in anticipation of litigation, and (3) reflect, request, or facilitate legal advice from iRhythm's in-house or outside counsel.[8] As reflected in iRhythm's privilege log, such communications concerning the Consultant Reports were confidential and kept between a handful of iRhythm employees, iRhythm's in-house counsel, outside counsel (WSGR), and, for certain documents, ████████. These documents and communications were prepared in anticipation of litigation and are thus protected work product. Moreover, because these documents and communications reflect client confidences shared by and between iRhythm personnel and iRhythm's attorneys (and their agents) for the purpose of legal advice and that were not disclosed to non-agent third parties, the attorney-client privilege applies, and the documents should not be disclosed to the Government.

3. <u>Documents Unrelated to the Consultant Reports are Privileged and Immune from Disclosure</u>

The Government has inexplicably included reference in its Petition to privileged documents wholly unrelated to the Consultant Reports. *See* Dkt. Nos. 1-4; 1-13.[9] Beyond simply citing these documents, the Government raises no serious argument as to why these documents are not protected from disclosure based on the grounds set forth in iRhythm's privilege log. *See Zucchella v. Olympusat, Inc.*, Case No. CV-19-7335-DSF (PLAx), 2021 WL 8317026 at *4, (C.D. Cal. Oct. 5, 2021) (denying motion for reconsideration regarding challenge to privilege log where challenger failed to "explain with any specificity why . . . particular entries on the log [were] deficient"). The

---

[8] Specifically, the following documents from ECF No. 1-4 reflect or request legal advice from iRhythm's in-house or outside counsel:  Nos. 240-41, 245, 247, 256, 264, 266, and 292. Moreover, the following documents from ECF No. 1-13 reflect or request legal advice from iRhythm's in-house or outside counsel:  Nos. 240, 245, 247, 264, 351–72.

[9] Specifically, the following documents from ECF No. 1-4 are not related to the Consultant Reports:  Nos. 3–236, 248–54, 257–61, 267–73, 283, 285–89, 293–96, 298–304, and 309–44. Moreover, the following documents from ECF No. 1-13 are not related to the Consultant Reports: Nos. 248–54, 257–61, 267, and 2928–29.

documents include, for example, draft service agreements or consulting contracts reflecting counsel's edits (*see, e.g.*, Dkt. No. 1-4, Log Nos. 5, 79, 133), notes reflecting legal advice from counsel (*see, e.g.*, Dkt. No. 1-4, Log Nos. 140–52), draft document preservation memoranda issued by counsel in connection with a grand jury investigation (*see, e.g.*, Dkt. No. 1-4, Log Nos. 248, 250), and documents providing information to counsel to assist counsel in providing legal advice related to the Company's response to an FDA audit (*see, e.g.*, Dkt. No. 1-13, Log Nos. 2928–29). As with the other documents included in the Petition, each of these entries sets forth the grounds for iRhythm's claim of attorney-client privilege or attorney work product (or both), includes a detailed description as to the nature of the legal advice or pending litigation that forms the basis for each claim, and specifically identifies relevant legal counsel involved. Thus, iRhythm has met its burden as to these documents, and the Court should order that such documents need not be disclosed.

## V. **CONCLUSION**

For the foregoing reasons, iRhythm respectfully requests that the Court deny the Government's Petition for Order to Show Cause and Application for Enforcement of Administrative Subpoena.

DATED:  August 16, 2024

Respectfully Submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By   */s/ Kristin N. Tahler*

Kristin N. Tahler
Attorney for Respondent
IRHYTHM TECHNOLOGIES, INC.