QUINN EMANUEL URQUHART & SULLIVAN, LLP
Kristin N. Tahler (Bar No. 261908)
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
kristintahler@quinnemanuel.com

*Attorneys for Respondent iRhythm Technologies, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Petitioner,<br><br>v.<br><br>IRHYTHM TECHNOLOGIES, INC.,<br><br>    Respondent. | Civil Action No.: 3:24-cv-03967-AMO<br><br>**DECLARATION OF MARK DAY IN SUPPORT OF RESPONDENT'S OPPOSITION TO PETITION FOR ORDER TO SHOW CAUSE AND APPLICATION FOR ENFORCEMENT OF ADMINISTRATIVE SUBPOENA** |

I, Mark Day, declare as follows:

1. I am currently a Strategic Advisor for iRhythm Technologies, Inc. ("iRhythm"). I formerly served as Chief Technology Officer and Executive Vice President for Research and Development at iRhythm. Except as otherwise stated herein, I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

2. On ▮▮▮▮ then-legal counsel for iRhythm, provided via email a memorandum outlining (1) various complaints raised by ▮▮▮▮, then-Senior Regulatory Affairs Specialist at iRhythm, (2) ▮▮▮▮ preliminary investigation of ▮▮▮▮ complaints, and (3) associated legal advice. ▮▮▮▮ provided this memorandum to ▮▮▮▮ and myself. I understand that a true and correct copy of the email and attached memorandum will be submitted for *in camera* review as Exhibit 1.

3. ▮▮▮▮ did not have extensive experience with ▮▮▮▮ at issue in ▮▮▮▮ complaints.

4. At the direction of ▮▮▮▮, I contacted ▮▮▮▮ and spoke to ▮▮▮▮, a representative of this consultancy, the following day regarding ▮▮▮▮.

5. ▮▮▮▮ informed ▮▮▮▮ and myself via email that she had requested and received legal advice from Rebecca Stuart, whistleblower and employment counsel at Wilson Sonsini Goodrich & Rosati ("WSGR"), regarding the Company's response to ▮▮▮▮ complaints. ▮▮▮▮ relayed the legal advice she received from WSGR in this email. I understand that a true and correct copy of the email will be submitted for *in camera* review as Exhibit 2.

6. At the direction of ▮▮▮▮ and WSGR, iRhythm retained ▮▮▮▮ to conduct an assessment of ▮▮▮▮ in order to assist ▮▮▮▮ in assessing ▮▮▮▮ claims. If not for ▮▮▮▮ claims and the related advice of counsel, iRhythm would

1 not have retained a consultant to conduct such an assessment. Such an assessment was as a result of
2 ████ claims. It was not a regularly-scheduled ████ audit or otherwise an assessment
3 iRhythm intended to commission.

4      7.     To facilitate ████ assessment and on behalf of ████ ████
5 ████, I communicated with representatives of ████, including ████,
6 ████, and ████, regarding logistics for the assessment, the appropriate scope of the
7 assessment, and the form of ████ report.

8      8.     ████ provided ████ with its final written report
9 (████). ████ forwarded the report to me via email on the same day.  I
10 understand that a true and correct copy of the email will be submitted for *in camera* review as
11 Exhibit 3.

12      9.     Based on the findings of the ████, and at the direction of ████
13 iRhythm began to assess potential changes to ████. At the direction of ████ I,
14 along with ████
15 ████ met to discuss the scope of such changes.
16 ████ was necessarily involved in carrying out these changes.

17      10.    To determine the appropriate scope of such changes, it was necessary to assess both
18 the credibility and detailed implications of the ████.

19      11.    Thus, iRhythm retained two additional consultants—████
20 ████ ████ ████
21 ████
22 ████ If not for ████ claims, the related advice of counsel, and ████,
23 iRhythm would not have retained these consultants to conduct such assessments. Such assessments
24 were as a result of ████ claims. They were not regularly-scheduled ████ audits or
25 otherwise assessments iRhythm intended to commission.

26      12.    To conduct his assessment, ████
27 ████
28 ████

1  ███████████████████████████████████████████████████████████████
2  ███.

3    13.  To conduct her assessment, ██████████████████████████████
4  ███████████████████████████████████████████████████████████████
5  ██████████████████████████████████████████████    ██████
6  ████████████████████████████████████████.

7    14.  ██████ ██ ████████ ████████, iRhythm's Quality/Regulatory department
8  divided its efforts between product quality control and regulatory compliance. At the time, the
9  "Regulatory" side of the team consisted of ████████ and her supervisor, ████████████. ██████ was
10 responsible for the activities of the entire team. █████████████████████████████
11 ████████████████████████████████████████████████. ████████ as the Senior
12 Regulatory Affairs Specialist, was the sole employee at iRhythm whose primary job responsibility
13 was ████████████████.

14    I declare under penalty of perjury of the laws of the United States that the foregoing is true
15 and correct. Executed in San Francisco, California on August 16, 2024.

*/s/ Mark Day*
Mark Day