1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Kristin N. Tahler (Bar No. 261908)
2  865 S. Figueroa Street, 10th Floor
   Los Angeles, CA 90017
3  Telephone:  (213) 443-3000
4  kristintahler@quinnemanuel.com

5  *Attorneys for Respondent*
   *iRhythm Technologies, Inc.*
6

7                    UNITED STATES DISTRICT COURT

8                    NORTHERN DISTRICT OF CALIFORNIA

9                         SAN FRANCISCO DIVISION

10

11

12  UNITED STATES OF AMERICA,            Civil Action No.: 3:24-cv-03967-AMO

13      Petitioner,                      **RESPONDENT'S EMERGENCY
                                         MOTION TO STAY OR, IN THE
14  v.                                   ALTERNATIVE, TO EXTEND THE
                                         PRODUCTION DEADLINE SET FORTH
15  IRHYTHM TECHNOLOGIES, INC.,          IN THE MAY 30, 2025 ORDER**

16      Respondent.

## TABLE OF CONTENTS

Page

I.   INTRODUCTION .................................................................................................................. 1

II.  BACKGROUND .................................................................................................................... 1

III. ARGUMENT .......................................................................................................................... 2

    A.   iRhythm Requests That The Court Stay The Order ................................................... 2

        1.  iRhythm Is Likely To Succeed On The Merits Of Its Future Appeal ............................ 2

        2.  iRhythm Will Suffer Irreparable Harm Absent A Stay ................................................... 3

        3.  The Government Will Suffer No Injury From A Stay ................................................... 4

        4.  The Public Interest Favors A Stay ................................................................................. 4

    B.   Alternatively, iRhythm Requests That The Court Suspend The Production Deadline To Allow iRhythm To Seek A Stay From the Ninth Circuit ........................................... 5

IV. CONCLUSION ...................................................................................................................... 6

# TABLE OF AUTHORITIES

### Cases

*Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona*,
    881 F.2d 1486 (9th Cir. 1989) ............................................................................................. 3

*Doe #1 v. Trump*,
    957 F.3d 1050 (9th Cir. 2020) ............................................................................................. 2

*E.E.O.C. v. FedEx Corp.*,
    2007 WL 9734298 (D. Ariz. Oct. 5, 2007) ......................................................................... 2

*In re Ford Motor Co.*,
    110 F.3d 954 (3d Cir. 1997) ................................................................................................ 3

*Lair v. Bullock*,
    697 F.3d 1200 (9th Cir. 2012) ............................................................................................. 2

*Leiva-Perez v. Holder*,
    640 F.3d 962 (9th Cir. 2011) ............................................................................................... 2

*In re Lott*,
    139 F. App'x 658 (6th Cir. 2005) ........................................................................................ 4

*N.L.R.B. v. Fresh & Easy Neighborhood Mkt., Inc.*,
    805 F.3d 1155 (9th Cir. 2015) ............................................................................................. 4

*Reich v. Montana Sulphur & Chem. Co.*,
    32 F.3d 440 (9th Cir. 1994) ................................................................................................. 5

*In re Search Warrant Issued June 13, 2019*,
    942 F.3d 159 (4th Cir. 2019) ............................................................................................... 3

*Simon v. City & Cnty. of San Francisco*,
    135 F.4th 784 (9th Cir. 2025) .............................................................................................. 2

*United States v. Philip Morris Inc.*,
    314 F.3d 612 (D.C. Cir. 2003) ............................................................................................. 3

*United States v. Sanmina Corp. & Subsidiaries*,
    2018 WL 6330428 (N.D. Cal. Dec. 4, 2018) ...................................................................... 2

*United States v. Sanmina Corp.*,
    968 F.3d 1107 (9th Cir. 2020) ............................................................................................. 3

## I.    INTRODUCTION

Respondent iRhythm Technologies, Inc. ("iRhythm") hereby respectfully files this Emergency Motion requesting that the Court stay its upcoming June 20, 2025 production deadline set forth in its May 30, 2025 Order (ECF No. 52) (the "Order") to allow iRhythm to seek appellate review of the privilege rulings in the Order. Alternatively, iRhythm requests that the Court suspend the deadline in the Order until 30 days after entry of the Proposed Order filed herewith. This would allow iRhythm to seek a stay from the appellate court pending its appeal. Either form of relief will entail nothing worse than a judicious pause while facilitating orderly appellate review and sparing the parties and the courts the burdens of extraordinary motions practice.[1]

## II.    BACKGROUND

On May 30, 2025, this Court granted in part the Government's Petition for Order to Show Cause and Application for Enforcement of Administrative Subpoena and ordered iRhythm to disclose the specified Consultant Reports and related documents and communications by June 20, 2025—within 21 days of the Order. (ECF No. 52 at 11). Yet the Order did not resolve all other outstanding issues, specifically as to whether the remaining privilege log entries in dispute (items 257 through 260, 267, and 2928) are protected. *Id.* Instead, the Court ordered further briefing on those privilege issues such that these proceedings remain ongoing. *Id.*

Since then, the Government has withdrawn its request and no longer seeks to compel production of privilege log entries 257–260, 267, and 2928. The Court granted a stipulation stating the same on June 9, 2025. (ECF No. 58). At this time, the Court's June 20 production deadline remains. iRhythm thus respectfully requests that the Court stay the June 20 production deadline set forth in the Order pending appeal, or that the Court suspend the June 20 deadline until 30 days after entry of the Proposed Order filed herewith.

---

[1] Please note that iRhythm had to provide a response date of 14 days when filing this Emergency Motion because the filing system required it. Further, the filing system required iRhythm to select a hearing date of Thursday, July 3, 2025 at 2:00 p.m. For the avoidance of doubt, iRhythm respectfully requests a ruling before the Court's June 20, 2025 deadline and selected both the response date and hearing date out of necessity.

## III. ARGUMENT

### A. iRhythm Requests That The Court Stay The Order

iRhythm respectfully requests that this Court stay its Order pending iRhythm's anticipated appeal from a final judgment. The four familiar stay factors are "(1) whether the [movant] has made a strong showing of the likelihood of success on the merits; (2) whether the [movant] will be irreparably injured absent a stay; (3) whether a stay will substantially injure other parties; and (4) where the public interest lies." *Doe #1 v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020). The irreparable harm factor is among the two most important. *Id.* And a strong showing of likelihood of success is demonstrated when "there is a substantial case for relief on the merits." *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 816 (9th Cir. 2025) (quotation omitted). Notably, district courts in this Circuit regularly grant stays of administrative subpoenas. *United States v. Sanmina Corp. & Subsidiaries*, 2018 WL 6330428, at *1 (N.D. Cal. Dec. 4, 2018); *E.E.O.C. v. FedEx Corp.*, 2007 WL 9734298, at *2 (D. Ariz. Oct. 5, 2007).

Stay of the Order would be well justified under each of the four factors.

#### 1. iRhythm Is Likely To Succeed On The Merits Of Its Future Appeal

iRhythm readily satisfies the first factor by posing a "substantial case for relief on the merits," considering the novelty of the legal issues posed here regarding the three Consultant Reports and the palpable prospect that the Ninth Circuit may come out differently from this Court upon confronting a waiver question of first impression. *Lair v. Bullock*, 697 F.3d 1200, 1203–04, 1214 (9th Cir. 2012); *Leiva-Perez v. Holder*, 640 F.3d 962, 967–68 (9th Cir. 2011). Without belaboring prior briefing, iRhythm respectfully incorporates by reference its relevant submissions (ECF No. 16) as presenting, at a minimum, very serious arguments on the merits.

In particular, iRhythm respectfully reiterates (ECF No. 16 at 14–24) that the Consultant Reports are protected by attorney work product privilege because they were prepared in anticipation of litigation, and the Government has not demonstrated a substantial need for them. Moreover, other documents specified by the Order are subject to the attorney-client privilege, as reflected in iRhythm's privilege log. And the Government has not properly carried its burden to challenge protection or privilege as to any particular document, as logged by iRhythm.

To be sure, the Order holds that iRhythm waived work product privilege over the Consultant Reports and related documents merely because iRhythm did not block access to the reports from an individual whose professional responsibilities naturally encompassed (indeed principally included) reviewing such documents. Yet the Order does not cite a case finding waiver on like facts, and the question whether waiver obtains here is, by all indications, a question of first impression for the Ninth Circuit. This Court rightly noted in its order that iRhythm cited no case in its briefing that is on all fours. (ECF No. 52 at 5). But the same can be said of the Government, as it has failed to cite a case with analogous facts, let alone one finding waiver on these facts. In these circumstances, it remains questionable that a voluntary waiver results from allowing an employee who is directly responsible for the subject matter of those documents to access those reports, part and parcel of their ongoing job duties. It is even more questionable that the same waiver analysis and outcome applies to attorney-client privilege, no differently from work-product protection, as the Order assumes. (ECF No. 52 at 9–10) ("As discussed above, . . . iRhythm voluntarily disclosed the Consultant Reports to Catalano, a known potentially adverse party. In doing so, iRhythm waived attorney client privilege as to the Consultant Reports and any documents or communications concerning the subject of the Consultant Reports."); *see, e.g.*, *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116–19, 1119–23 (9th Cir. 2020). Suffice it to note, therefore, that the instant questions are novel and the ultimate resolution of them is uncertain.

For these reasons and those set forth in iRhythm's opposition (ECF No. 16), iRhythm has a "substantial case" for relief on appeal.

### 2. iRhythm Will Suffer Irreparable Harm Absent A Stay

If iRhythm is forced to turn over privileged documents, it will be irreparably harmed. *Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona*, 881 F.2d 1486, 1490 (9th Cir. 1989) ("If Admiral is required to produce a privileged statement, it will suffer immediate, irreparable harm."); *see also In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 175 (4th Cir. 2019) (holding and collecting cases holding that turning over privileged documents would work irreparable harm).

Moreover, courts have long held that revelation of assertedly protected/privileged material itself constitutes the irreparable harm. *See, e.g.*, *United States v. Philip Morris Inc.*, 314 F.3d 612,

621–22 (D.C. Cir. 2003) ("Although [the party] 'has not asserted any specific irreparable injury that would occur' if it produced the [document], the general injury caused by the breach of the attorney-client privilege and the harm resulting from the disclosure of privileged documents to an adverse party is clear enough." (quotation omitted)); *see also In re Ford Motor Co.*, 110 F.3d 954, 962–64 (3d Cir. 1997) ("Appeal after final judgment cannot remedy the breach in confidentiality occasioned by erroneous disclosure of protected materials. . . . [T]he cat is already out of the bag. . . . [T]here is no way to unscramble the egg scrambled by the disclosure . . . .").

### 3. The Government Will Suffer No Injury From A Stay

The Government will suffer no appreciable harm from a brief stay of this Court's interim discovery ruling pertaining to one production. The Government issued a subpoena with thirty-two requests spanning over a decade, and it has received over 435,000 documents to date. (ECF No. 16 at 20–21). Having requested and received nearly half a million documents, the Government cannot persuasively claim that its investigation will be prejudiced by pausing the production of three reports concerning discrete subject matter that is not even defined or mentioned in the subpoena. Further, the Government was silent on this issue for over six months after the parties' December 2023 conferral before raising it again, which just underscores that there is simply no urgency or prejudice with the relief requested herein. And any theoretical harm from a slight additional delay in the enforcement proceeding would be vastly outweighed by the irreparable harm to iRhythm. *See, e.g.*, *In re Lott*, 139 F. App'x 658, 663 (6th Cir. 2005) ("It is difficult to see how the harm that would be caused to the State by a stay could outweigh the important interests of Lott, the legal system, and the public interest in resolving this question.").

### 4. The Public Interest Favors A Stay

The public interest would also be served by a stay. The Order threatens to put companies in an impossible bind and effectively force them to discriminate against whistleblowers who otherwise belong in a control group. As iRhythm explained, opposing the Government's petition, (ECF No. 16 at 15–16), companies that attempt in good faith to remediate issues raised by potential whistleblowers should not be forced to make a Hobson's choice between waiving work product

protection and opening themselves up to claims of retaliation in an ever-broadening landscape of whistleblower protection regulations.

For these reasons, enforcing the order without the benefit of appellate review would contravene the public interest. Indeed, preserving effective appellate review of orders enforcing administrative subpoenas is important and valuable for the broader public. iRhythm is entitled to *de novo* review of an adverse ruling enforcing an administrative subpoena against it. *N.L.R.B. v. Fresh & Easy Neighborhood Mkt., Inc.*, 805 F.3d 1155, 1159 (9th Cir. 2015). As the Ninth Circuit has noted, the administrative subpoena power "is not self-enforcing" and when an administrative "subpoena is resisted" the Government "must seek judicial enforcement." *Reich v. Montana Sulphur & Chem. Co.*, 32 F.3d 440, 444 (9th Cir. 1994). Appellate review is a key component of such "judicial enforcement" and the public interest is served by enabling it to proceed meaningfully.[2]

**B.     Alternatively, iRhythm Requests That The Court Suspend The Production Deadline To Allow iRhythm To Seek A Stay From the Ninth Circuit**

Should the Court decline to issue a stay pending appeal of the Order, iRhythm respectfully requests that the June 20, 2025 production deadline set forth in the Order be extended to 30 days from entry of the Proposed Order filed herewith. By shifting the production deadline in this manner, this Court would aid judicial efficiency while avoiding possible prejudice to iRhythm's right to appeal on novel legal issues implicating core privilege, before it is compelled to relinquish documents to the Government. Specifically, this brief suspension will allow iRhythm to seek a stay from the Ninth Circuit without suffering the prejudice of having to turn over the privileged documents (or suffer contempt) in the interim.

iRhythm faces a fixed, fast-approaching production deadline of June 20, 2025 to produce the specified documents in the Order. For the sake of averting prejudice and sparing undue burdens upon the courts, iRhythm respectfully requests that the Court suspend the production deadline in the Order until 30 days from entry of the Proposed Order filed herewith.

---

[2] Absent relief enabling it to pursue an ordinary appeal from final judgment, iRhythm may seek an extraordinary writ and attendant stay from the Ninth Circuit, for much the same reasons set forth herein.

## IV.  CONCLUSION

For the foregoing reasons, iRhythm respectfully files this Emergency Motion requesting that the Court stay the pending June 20, 2025 deadline in the Order pending appeal or, alternatively, extend the production deadline in the Order to 30 days from entry of the Proposed Order filed herewith.

DATED: June 11, 2025

Respectfully Submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP


By  /s/ *Kristin N. Tahler*

Kristin N. Tahler
Attorney for Respondent
IRHYTHM TECHNOLOGIES, INC.