# EXHIBIT A

No. 25-3736

In The

# United States Court of Appeals

For The Ninth Circuit

————— ▶▶◀◀ —————

United States of America.

*Petitioner–Appellee,*

v.

iRhythm Technologies, Inc.

*Respondent–Appellant.*

———————————

*On Appeal From The United States District Court For The Northern District of California, Hon. Araceli Martínez-Olguín, Case No. 3:24-cv-03967-AMO*

**EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 FOR A STAY PENDING APPEAL AND FOR AN IMMEDIATE ADMINISTRATIVE STAY
RELIEF REQUESTED BY JUNE 19, 2025**

Kristin N. Tahler
Quinn Emanuel Urquhart & Sullivan, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000

Derek L. Shaffer
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005
(202) 538-8000

Nicholas J. Caluda
Quinn Emanuel Urquhart & Sullivan, LLP
700 Louisiana Street, Suite 3900
Houston, TX 77002
(713) 221-7000

*Attorneys for Respondent-Appellant iRhythm Technologies, Inc.*

# UNDER SEAL

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ..................................................................................... ii

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 4

    A.    iRhythm, Catalano, And The Consultant Reports ................................ 4

    B.    The Privilege Dispute .......................................................................... 6

    C.    The District Court Proceedings ............................................................ 9

ARGUMENT .................................................................................................... 11

I.    THIS COURT SHOULD STAY THE ENFORCEMENT ORDER PENDING APPEAL ........................................................................................ 11

    A.    iRhythm Is Likely To Succeed On Appeal .......................................... 12

        1.    iRhythm Did Not Waive Work Product Protections Over The Consultant Reports ............................................................ 13

        2.    In No Event Did iRhythm Sweepingly Waive Protections And Privilege Across The Subject Matter ................................ 18

    B.    iRhythm Will Suffer Irreparable Harm Absent A Stay ........................ 21

    C.    The Government Will Suffer No Injury From A Stay .......................... 22

    D.    The Public Interest Favors A Stay ...................................................... 23

II.    THE COURT SHOULD ENTER AN ADMINISTRATIVE STAY ............ 24

CERTIFICATE OF COMPLIANCE ..................................................................... 26

CERTIFICATE OF SERVICE ............................................................................. 27

# TABLE OF AUTHORITIES

**Page**

## Cases

*Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Ariz.*,
   881 F.2d 1486 (9th Cir. 1989) ...............................................................21

*Al Otro Lado v. Wolf*,
   945 F.3d 1223 (9th Cir. 2019) ...............................................................25

*In re Am. Realty Cap. Props., Inc. Litig.*,
   2017 WL 11641957 (S.D.N.Y. Aug. 14, 2017)....................................16

*Chevron Corp. v. Pennzoil Co.*,
   974 F.2d 1156 (9th Cir. 1992) ...............................................................19

*Connaught Labs., Inc. v. SmithKline Beecham P.L.C.*,
   165 F.3d 1368 (Fed. Cir. 1999) .............................................................22

*Doe #1 v. Trump*,
   957 F.3d 1050 (9th Cir. 2020) ...............................................................12

*E.O.C. v. Fed. Exp. Corp.*,
   558 F.3d 842 (9th Cir. 2009) .................................................................11

*In re Ford Motor Co.*,
   110 F.3d 954 (3d Cir. 1997) ..................................................................22

*Glazing Employers & Glaziers' Union Local #27 Pension &*
   *Retirement Fund v. iRhythm Technologies, Inc.*,
   No. 3:24-cv-00706-JSC (N.D. Cal. July 19, 2024) ..........................8, 9

*Hernandez v. Tanninen*,
   604 F.3d 1095 (9th Cir. 2010) ...............................................................21

*In re Kellogg Brown & Root, Inc.*,
   756 F.3d 754 (D.C. Cir. 2014)................................................................18

*Lair v. Bullock*,
   697 F.3d 1200 (9th Cir. 2012) ...............................................................12

*Leiva-Perez v. Holder*,
    640 F.3d 962 (9th Cir. 2011) ...............................................................12

*U.S. ex rel. Lewis v. Cal. Inst. of Tech.*,
    2021 WL 1600488 (C.D. Cal. Apr. 19, 2021) ....................................17

*In re Lott*,
    139 F. App'x 658 (6th Cir. 2005) .......................................................23

*In re Lott*,
    424 F.3d 446 (6th Cir. 2005) ...............................................................22

*Maness v. Meyers*,
    419 U.S. 449 (1975)..............................................................................22

*N.L.R.B. v. Fresh & Easy Neighborhood Mkt., Inc.*,
    805 F.3d 1155 (9th Cir. 2015) .............................................................12

*Nat'l Urb. League v. Ross*,
    977 F.3d 698 (9th Cir. 2020) ...............................................................24

*Nken v. Holder*,
    556 U.S. 418 (2009)..............................................................................11

*Patten v. Grant Joint Union High Sch. Dist.*,
    37 Cal. Rptr. 3d 113 (Cal. Ct. App. 2005).........................................17

*In re Perrigo Co.*,
    128 F.3d 430 (6th Cir. 1997) ...............................................................22

*Reich v. Mont. Sulphur & Chem. Co.*,
    32 F.3d 440 (9th Cir. 1994) .................................................................24

*Rhode Island v. Lead Indus. Ass'n*,
    64 A.3d 1183 (R.I. 2013).......................................................................15

*In re Search Warrant Issued June 13, 2019*,
    942 F.3d 159 (4th Cir. 2019) .........................................................21, 22

*In re Subpoena Duces Tecum*,
    228 F.3d 341 (4th Cir. 2000) ...............................................................11

*Sudenga Indus., Inc. v. Glob. Indus., Inc.*,
   2020 WL 2513072 (D. Kan. May 15, 2020)........................................................14

*Tremblay v. OpenAI, Inc.*,
   2024 WL 3748003 (N.D. Cal. Aug. 8, 2024) ....................................................21

*Union Ins. Co. v. Delta Casket Co.*,
   2009 WL 10664839 (W.D. Tenn. Aug. 7, 2009)................................................14

*United States v. Mendelsohn*,
   896 F.2d 1183 (9th Cir. 1990) .........................................................................19

*United States v. Sanmina Corp.*,
   968 F.3d 1107 (9th Cir. 2020) ...................................... 12, 13, 16, 18, 19, 20, 21

*United States v. Texas*,
   144 S. Ct. 797 (2024)........................................................................................24

*Upjohn Co. v. United States*,
   449 U.S. 383 (1981)..........................................................................................18

## Statutes and Rules

18 U.S.C. § 3486.....................................................................................................6

28 U.S.C. § 1291 ..................................................................................................11

21 C.F.R. Part 820..................................................................................................4

21 C.F.R. § 820.30(a)(1) ........................................................................................5

21 C.F.R. § 820.30(j) .............................................................................................5

17 Cal. Lab. Code § 1102.5 .....................................................................................

Fed. R. App. P. 8(a)(2)(A)(ii) ..............................................................................11

Fed. R. Civ. P. 26(b)(3)(A) ..................................................................................13

## Other Authority

*Compilation of Federal Whistleblower Protection Statutes*,
   CONGRESSIONAL RESEARCH SERVICE (Jan. 13, 2025) .........................................16

This appeal arises from an enforcement action involving an administrative subpoena in which the Government seeks dozens of documents shielded by work-product protections and/or attorney-client privilege.   Under Federal Rule of Appellate Procedure 8 and Circuit Rule 27-3, Appellant iRhythm respectfully requests that the Court enter a stay pending appeal of the district court's unstayed decision ordering iRhythm to hand over those documents to its adversary by June 20.[1]  iRhythm also respectfully requests an immediate administrative stay while the Court considers this motion.

## INTRODUCTION

iRhythm is a respected medical-device manufacturer.   When its Senior Regulatory Affairs Specialist, Gina Catalano, raised certain ████████████ concerns, the company duly investigated.  As part of its investigation, and at the direction of iRhythm's in-house and outside counsel, iRhythm commissioned three reports to help prepare against a potential whistleblower claim by Catalano and also to ██████████████████ (the "Consultant Reports").  When the consultants prepared the reports, iRhythm was obliged to share them with Catalano (at the time the Senior Regulatory Affairs Specialist and as such the employee qualified to

---

[1]   iRhythm's request for a stay or extension remains pending below.  Given the imminent deadline and the prospect of contempt, however, iRhythm files the instant request so that this Court can potentially rule before irreparable harm ensues.

implement them), lest it oust her from core job duties and ████████████ ████████████ █ ███ ███████ ████████. So iRhythm complied with whistleblower protections and ████████████████ by affording Catalano confidential access to the reports.

The district court (Martínez-Olguín, J.) has effectively punished iRhythm for proceeding as it did. According to the ruling below, iRhythm was voluntarily waiving any applicable protection and privilege just by confidentially sharing the Consultant Reports with the company's sole regulatory specialist. The question whether waiver properly results on these facts is novel, important, and squarely presented in iRhythm's pending appeal from final judgment. Yet iRhythm faces a **June 20** production deadline and the specter of contempt if it tries to maintain privilege until this Court has a say. This is a prototypical instance for granting a stay pending appeal in light of iRhythm's prospects on appeal, the irreparable harm it faces, and the straightforward equitable case for maintaining the status quo. Moreover, iRhythm pledges in advance to proceed according to any expedited schedule the Government may reasonably propose or this Court may set.

On the merits, the district court erred by treating Catalano solely as a potential, future adversary. This skips past the first step in the waiver framework: whether Catalano was a third party at the time of the disclosure. Far from being a third party, Catalano was a key employee who played an essential role in helping iRhythm

██████████████. Nor should it lightly be said that a company in iRhythm's position is *voluntarily* waiving any protection or privilege when it does what it *must* do—keeping Catalano in the loop, lest it arguably be retaliating against a whistleblower and prompting a lawsuit. Instead of grappling with this dilemma, the district court denied its existence, claiming iRhythm was under no obligation to share the reports with Catalano. But a bevy of federal and state whistleblower-retaliation statutes specify the opposite, evidencing obvious error below.

The court compounded its error by ruling that iRhythm waived not only work-product protections but also attorney-client privilege over dozens of other documents related to the reports. That ruling suffers numerous flaws. It wrongly equates the waiver analysis for work-product protections and the attorney-client privilege. It ignores that any subject-matter waiver should have been limited to other documents revealing the content of the reports—the material actually disclosed—not just documents relating to them. And it fails to account for the overriding concern with achieving *fairness* in this context. Here, it smacks of unfairness to grant a documentary windfall to the Government simply because iRhythm did not prohibit its regulatory-compliance specialist from accessing ████████████ reports.

Beyond iRhythm's likelihood of success on the merits, the equities strongly favor a stay. Being forced to turn over privileged documents—on pain of contempt—poses classic irreparable harm. Once the Government sees documents it

should never see, that can never be undone, nor can damage to the policies underlying privilege be repaired. On the flip side, a short stay pending appeal will not harm the Government—as evidenced by the snail's pace at which it has pursued its investigation and litigated this case. And the public has an interest in both (i) sparing companies from punishment when they investigate ████████████ issues raised by potential whistleblowers, and (ii) preserving meaningful appellate review of orders granting administrative subpoenas.

Accordingly, the Court should grant a stay pending appeal and a brief administrative stay. iRhythm also consents in advance to any expedition that the Government may reasonably request or this Court may order.

## BACKGROUND

### A.    iRhythm, Catalano, And The Consultant Reports

Since 2009, iRhythm has provided cardiac monitoring devices to over six million patients. As a medical-device manufacturer, iRhythm is subject to myriad federal and state medical-device regulations, including the Food and Drug Administration's Quality System Regulation ("QSR"). *See generally* 21 C.F.R. Part 820. The QSR requires iRhythm to "establish and maintain procedures to control the design of the device in order to ensure that specified design requirements are met." 21 C.F.R. § 820.30(a)(1). ████████████████████████

████████████████████████████████████ The

QSR further requires that records of design control procedures and other development documentation be kept in the design history file for each medical device. 21 C.F.R. § 820.30(j).

Beginning around ████████, Catalano lodged several complaints regarding ███████████████████████████████████████████ with iRhythm. Ex. 7 at ¶ 2; Ex. 6 at 3. Some of those complaints related to ██████████████████████████ ████████████. Ex. 7 at ¶ 6. Catalano was personally responsible for ensuring that iRhythm complied with the relevant regulations. *Id.* at ¶ 14. She raised her complaints with iRhythm's then in-house counsel, Denise Andresen, along with Andresen's boss, Matthew Garrett, iRhythm's then-Chief Financial Officer. *Id.* at ¶ 2; Ex. 6 at 3.

After receiving Catalano's complaints, Andresen conducted a preliminary investigation into her claims. Ex. 7 at ¶ 2. She personally interviewed Catalano to assess the risk of whistleblower-related litigation. Ex. 6 at 3. Soon thereafter, Andresen retained outside counsel to advise on appropriate measures for addressing potential litigation arising from Catalano's complaints. Ex. 7 at ¶ 5.

Both to effectively defend against potential whistleblower claims ██████ ████████████████████████████████Catalano ██████ iRhythm commissioned three separate reports from outside consultants at the direction of its in-house and outside counsel—the Consultant Reports. *Id.* at ¶¶ 6, 9-11. ████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████. *Id.* at ¶¶ 12-13.

During this ████████████████ process, Catalano continued as the Senior Regulatory Affairs Specialist. *Id.* at ¶ 14. She was iRhythm's lone employee who spent all her time working on regulatory-compliance issues. *Id.* Given that role, iRhythm needed to allow Catalano to have access to the Consultant Reports so that she could do her job: ███████████████████████████████████

███████. *See id.* iRhythm could not have tasked another employee with ██

████████████████ because Catalano was the sole Senior Regulatory Affairs Specialist. *See id.* Had iRhythm withheld the reports from Catalano and denied her the opportunity to do her job, ████████████████████████████████

████████████████ it would have simultaneously set itself up for retaliation claims.

## B.    The Privilege Dispute

On April 4, 2023, iRhythm accepted service of the Government's administrative subpoena issued under the Health Insurance Portability and Accountability Act, 18 U.S.C. § 3486 ("HIPAA Subpoena"). Ex. 8 at ¶ 2. The subpoena contained thirty-two expansive document requests relating to possible federal health care offenses. Ex. 2. Following multiple discussions with the Government regarding scope, iRhythm began producing documents two months

later.  Ex. 8 at ¶ 3.  To date, iRhythm has reviewed over 2.5 million documents and produced over 435,000.  *Id.* at ¶ 4.  As part of the production proceedings, iRhythm provided a detailed privilege log.  *Id.* at ¶ 7; Ex. 5.

On December 7, 2023, months after iRhythm commenced production, the Government claimed for the first time that it could not sufficiently assess iRhythm's privilege assertions.  Ex. 8 at ¶ 9.  The Government argued that, because it was not privy to Catalano's complaints, it could not determine whether iRhythm's privilege claims over the Consultant Reports were appropriate.  *Id.*  To aid the Government's understanding, counsel for iRhythm pointed to specific entries on iRhythm's privilege log outlining Catalano's complaints leading to the Consultant Reports.  *Id.*; Ex. 4 at 3-4.

But the parties quickly reached an impasse.  Ex. 8 at ¶ 10; Ex. 4 at 1.  After informing iRhythm of plans to "call to discuss a briefing schedule for an enforcement action" related to iRhythm's privilege assertions, the Government remained *silent* for *six months*.  Ex. 3 at 3; Ex. 8 at ¶¶ 8, 11.

Then, on June 27, 2024, the Government requested a call to discuss a purported "time-sensitive matter related to iRhythm."  Ex. 8 at ¶ 12.  While the basis for the claimed urgency was unclear, iRhythm dutifully met with the Government the next day.  *Id.* at ¶13.  The Government stated that it was "now in a position to litigate" iRhythm's privilege assertions as to the Consultant Reports and related

documents. *Id*. The Government advised that it planned to petition for an order to show cause and gave iRhythm one business day to state its position. *Id*. During the call, iRhythm's counsel requested that the Government identify the specific documents in dispute, but the Government—in what would become a familiar pattern—failed to do so. *Id*. At the same time, the Government stated that the motion would be filed publicly. *Id*. Thereafter, iRhythm informed the Government that it intended to maintain its privilege claims. *Id*. at ¶ 14. The Government filed an enforcement action in the Northern District of California on July 1, 2024. *See* Ex. 1.

By filing publicly when and as it did, the Government was deploying damaging tactics against iRhythm. Conspicuously, the Government's claimed urgency aligned with the deadline for class-action plaintiffs in parallel securities litigation to amend their complaint. *See Glazing Employers & Glaziers' Union Local #27 Pension & Retirement Fund v. iRhythm Technologies, Inc.*, No. 3:24-cv-00706-JSC, Dkt. No. 36 (N.D. Cal. July 19, 2024). The amended complaint, due on July 19, 2024, not only cited the Government's petition, but also quoted directly from iRhythm's confidential privilege logs that the Government filed on the public docket. *See id.* at 35-36, 44-45.

When iRhythm's counsel reached out to negotiate a briefing schedule on the show-cause petition, the Government maintained that it could not file a reply brief until two months after its "time sensitive" filing.  Ex. 8 at ¶ 16; Ex. 9.

## C.    The District Court Proceedings

In its petition, the Government argued that the Consultant Reports were not protected but, even if they were, iRhythm waived any protection by disclosing them to Catalano.  *See, e.g.*, Ex. 1 at 1.  It also generally asserted that iRhythm should produce an undefined mass of other documents because they purportedly relate to the Consultant Reports.  *See, e.g., id.*  The Government, however, failed to identify which particular documents on iRhythm's privilege log would meet that description.  *See generally id.*

iRhythm responded that the Consultant Reports fall within the heart of the work-product doctrine because they were prepared in anticipation of whistleblower litigation against Catalano.  Ex. 6 at 11-13.  iRhythm also argued that it did not waive by disclosing the Consultant Reports to Catalano because it did so under confidentiality agreement so that she could perform her core job duties.  Ex. 6 at 14-16; Ex. 10.  And iRhythm also explained that withholding the documents from Catalano would have subjected it to a whistleblower-retaliation claim.  Ex. 6 at 14-16.  Finally, iRhythm argued that the Government failed to identify which other documents it claimed iRhythm had improperly asserted were privileged, that the

9

documents reflecting the content of the Consultant Reports were protected work product, and that related documents were subject to both attorney-client privilege and work-product protections.  Ex. 6 at 17-20.

In reply, the Government finally identified which documents on iRhythm's privilege log it was challenging as relating to the Consultant Reports.  Ex. 11 at 13.

The district court held a hearing on May 1 and issued its opinion on May 30. The court assumed that the Consultant Reports were protected work product.  Ex. 12 at 4.  But it then found that iRhythm had waived that protection by disclosing the reports to Catalano, the potential adversary in any whistleblower litigation.  *Id.* at 4- 7.  The court did not accept iRhythm's argument that it needed to disclose the reports so as to let Catalano continue performing her core job duties and thereby to avoid a potential whistleblower-retaliation lawsuit.  *Id.* at 5-6.  Instead, it asserted that iRhythm had not cited any statute or regulation "requiring" it to turn over reports, *id.* at 6, apparently overlooking the specific whistleblower statutes that iRhythm had cited.  The court then proceeded to find that dozens of other documents lost their work-product *and* attorney-client-privileged status because they all merely "relate" to or "concern" the Consultant Reports.  *Id.* at 7-10.  It imposed a June 20 production deadline.  *Id.* at 11.

The court also requested additional briefing on some documents unrelated to the Consultant Reports.  *Id.* at 1.  The Government then withdrew its request for the

additional documents.  The parties accordingly stipulated that the Government would no longer seek those documents, and the district court terminated the schedule for additional briefing.  Ex. 13.  iRhythm then moved for a stay pending appeal or alternatively for a brief 30-day stay to allow iRhythm to seek a stay from this Court.  Ex. 14.  iRhythm filed its notice of appeal under 28 U.S.C. § 1291 two days later on June 13 in recognition that such an order enforcing an administrative subpoena constitutes an appealable final judgment.  Ex. 15; *E.O.C. v. Fed. Exp. Corp.,* 558 F.3d 842, 845 (9th Cir. 2009); *In re Subpoena Duces Tecum*, 228 F.3d 341, 346 (4th Cir. 2000).  The district court has yet to rule on iRhythm's motion to stay.  Because the production deadline is now only four days away, iRhythm cannot await further action by the district court and respectfully seeks emergency relief from this Court.  *See* Fed. R. App. P. 8(a)(2)(A)(ii).

## **ARGUMENT**

### I.    **THIS COURT SHOULD STAY THE ENFORCEMENT ORDER PENDING APPEAL**

This Court has discretion to issue a stay "dependent upon the circumstances of the particular case."  *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quotation omitted).  The four familiar stay factors are "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the

public interest lies." *Lair v. Bullock*, 697 F.3d 1200, 1203 (9th Cir. 2012) (quotation omitted). The first two factors are the most important. *Doe #1 v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020). Here, all four factors favor granting a stay.

### A. iRhythm Is Likely To Succeed On Appeal

A "strong showing" of success on the merits does not require the movant to "demonstrate that it is more likely than not that they will win on the merits." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (per curiam). Instead, it requires only that there be a "reasonable probability" of success, also referred to as "a substantial case on the merits." *Id.* at 966-67 (quotations omitted). That bar is readily cleared here considering that this Court will be reviewing *de novo* and confronting what appears to be a question of first impression. *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020); *see N.L.R.B. v. Fresh & Easy Neighborhood Mkt., Inc.*, 805 F.3d 1155, 1159 (9th Cir. 2015) ("We review de novo a district court's decision regarding enforcement of an agency subpoena." (quotation omitted)).

On *de novo* review, iRhythm has a substantial case on the merits. What is more, it is likely to succeed in establishing that the district court erred in ruling (1) that iRhythm waived work-product protections over the Consultant Reports, and (2) that iRhythm waived *both* work-product protections *and* attorney-client privilege over *all* documents relating to the Consultant Reports.

### 1. iRhythm Did Not Waive Work Product Protections Over The Consultant Reports

The district court was right to assume that the Consultant Reports were protected work product. *See* Ex. 12 at 4. They readily qualify as such. The Consultant Reports were prepared in anticipation of litigation, and the Government has not demonstrated a substantial need for them. Fed. R. Civ. P. 26(b)(3)(A). The court nevertheless held that iRhythm waived work-product protections over the Consultant Reports because iRhythm disclosed the reports to Catalano. Ex. 12 at 4-7. That holding should not stand.

*First*, unlike the attorney-client privilege where a disclosure to any third party can waive the privilege, the "disclosure of work product to a third party does not waive the protection unless such disclosure is made to an adversary in litigation or has substantially increased the opportunities for potential adversaries to obtain the information." *Sanmina Corp.*, 968 F.3d at 1121 (quotation omitted). *Sanmina* thus establishes that the analysis focuses first on whether there was a disclosure *to third parties*, and only then whether that third party is an *adversary*.

Here, iRhythm did not waive work-product protections over the Consultant Reports because it never disclosed them to a third party; it disclosed them to its *own key employee*, Catalano. Nor was Catalano some random employee—she was the Senior Regulatory Affairs Specialist who constituted iRhythm's sole employee fully responsible for regulatory compliance and ███████████████████

13

how to implement the Consultant Reports' recommendations. Ex. 7 at ¶ 14. Beyond that, iRhythm was protected from further disclosure as Catalano had signed a confidentiality agreement in connection with her employment. Ex. 10. In short, iRhythm allowed its Senior Regulatory Specialist to have access to the reports for the purpose of ██████████████████████. Because Catalano is not a third party, there is no waiver.

That is a straightforward conclusion. Both federal and state courts around the country have long held that disclosing work product or attorney-client communications to current employees does not result in a waiver because the employees are not third parties. *See, e.g.*, *Union Ins. Co. v. Delta Casket Co.*, 2009 WL 10664839, at *8 (W.D. Tenn. Aug. 7, 2009) (finding no work-product waiver because "the individuals included on the[] communications were not third parties but rather employees of Union and its parent corporation, W.R. Berkley"); *Sudenga Indus., Inc. v. Glob. Indus., Inc.*, 2020 WL 2513072, at *9 (D. Kan. May 15, 2020) ("The court agrees these are 'communications solely within AGI' and therefore privilege has not been waived based on communication with third-parties. Considering the structure of the company and the roles of the employees, these are not third-parties for the purposes of waiver of privilege. These are employees of the same entities."); *Rhode Island v. Lead Indus. Ass'n*, 64 A.3d 1183, 1195 (R.I. 2013) (accepting the argument that "the officers" of the company who received the

14

disclosed materials "were not third parties to Sherwin–Williams and, therefore, their presence did not waive any protection").

The district court entirely ignored the threshold issue that Catalano was not a third party *at all* when she accessed the Consultant Reports. *See* Ex. 7 at ¶ 14. Instead, the court relied almost entirely on the fact that iRhythm commissioned the Consultant Reports to prepare for potential whistleblower litigation against Catalano. Ex. 12 at 5-6. That, in the district court's view, brings this case within those where a party voluntarily discloses documents to the government during a formal investigation preceding charges. *Id.* at 5. But that ignores that Catalano was iRhythm's own employee, not an external adverse party. *See* Ex. 7 at ¶ 14. That she was also a potential adversary does not transform her into a third party when the reports were shared. Tellingly, neither the district court nor the Government cited a case suggesting otherwise. At a minimum, this Court will confront a novel, unsettled question as to how the waiver doctrine applies to a situation where the only disclosure was made confidentially to an internal employee (not a third party) who is *also* a potential adversary.

*Second*, even if Catalano were a third party (she was not), there would still be no waiver because she and iRhythm had a common interest in fixing any ███████ ███████ issues that Catalano had flagged. *See In re Am. Realty Cap. Props., Inc. Litig.*, 2017 WL 11641957, at *5 (S.D.N.Y. Aug. 14, 2017) (holding in the internal-

investigation context that sharing a report with a consultant did not waive the work-product protections because the consultant and the company "shared a common interest in getting to the root of any errors in ARCP's financial statements").

*Finally*, finding a waiver here would entail perverse consequences antithetical to the purpose of work-product protections, namely to "protect the adversarial process" and "prevent exploitation of a party's efforts in preparing for litigation." *Sanmina*, 968 F.3d at 1119-20 (quotation omitted). Had iRhythm withheld the Consultant Reports from Catalano, it would have frozen her out of her core, essential responsibilities, thereby exposing itself to a potential whistleblower retaliation claim. *See* Ex. 7 at ¶ 14; Ex. 6 at 14-16. Forcing iRhythm to invite a lawsuit is hardly consonant with protecting healthy operation of the adversarial process. Companies should not be put to a choice between waiving work-product protections or opening themselves up to claims of retaliation in an ever-broadening landscape of whistleblower-protection regulations. *See generally Compilation of Federal Whistleblower Protection Statutes*, CONGRESSIONAL RESEARCH SERVICE (Jan. 13, 2025) (listing over 60 separate federal whistleblower statutes).[2] The Catch-22 spawned by the decision below serves only to disincentivize companies from working in good faith to remedy issues raised by potential whistleblowers.

---

[2]  Available at https://crsreports.congress.gov/product/pdf/r/r46979.

The district court swept aside these concerns by first asserting that iRhythm had no statutory obligation to disclose the Consultant Reports to Catalano.  Ex. 12 at 5-6.  That is a head-scratching assertion.  Federal and state whistleblower-retaliation statutes consistently forbid iRhythm from taking any such adverse action against Catalano based on the fact that she raised complaints.  *See, e.g.*, *U.S. ex rel. Lewis v. Cal. Inst. of Tech.*, 2021 WL 1600488, at *14 (C.D. Cal. Apr. 19, 2021) (holding that "[t]ransfers of job duties" constitute "adverse employment decisions" under the FTC retaliation provisions); *Patten v. Grant Joint Union High Sch. Dist.*, 37 Cal. Rptr. 3d 113, 121 (Cal. Ct. App. 2005) (broadly defining "adverse employment action" for purposes of California's employment retaliation statute to include actions that are "reasonably likely to adversely and materially affect an employee's job performance or opportunity for advancement" (quotation omitted)); *id.* (noting that an adverse employment action under Cal. Lab. Code § 1102.5 is "indicated by . . . significantly diminished material responsibilities" (quotation omitted)).  Those obligations are etched into black-letter law.

The district court likewise erred in asserting that iRhythm should have created a dual-track investigation to separate out the business from the legal issues.  Ex. 12 at 6.  It failed to explain how the suggested approach would be practicable when the investigation in question was spawned by a potential whistleblower whose job is to ████████████████████████████████████████.  And it ignored the

unavoidable overlap between legal and business purposes served by a ████████

investigation like this. *Cf. Upjohn Co. v. United States,* 449 U.S. 383 (1981); *In re*

*Kellogg Brown & Root, Inc.*, 756 F.3d 754, 759 (D.C. Cir. 2014) (Kavanaugh, J.).

### 2.    In No Event Did iRhythm Sweepingly Waive Protections And Privilege Across The Subject Matter

The waiver analysis for the work-product protections and the attorney-client

privilege are distinct. *Sanmina*, 968 F.3d at 1116-19, 1119-21. These doctrines

designedly serve "unique" purposes, with one preserving the confidentiality of

attorney-client communications, and the other "protect[ing] the adversarial process"

via work-product protections. *Id.* at 1116, 1120-21. The district court, however,

equated the waiver analysis for one and the other. Ex. 12 at 7-10. Still worse, it

found a sweeping subject-matter waiver across dozens of other documents protected

by *both* work-product protections *and* the attorney-client privilege simply because it

found that iRhythm waived work-product protections over the Consultant Reports.

*Id.* These additional documents need to be disclosed, the Court reasoned, simply

because their privilege-log entries reference the Consultant Reports. *Id.* That was

error several times over.

*First*, under the subject-matter-waiver rule, "disclosure of information

resulting in the waiver of the attorney-client privilege constitutes waiver 'only as to

communications about the *matter actually disclosed*'"—nothing more. *Sanmina*,

968 F.3d at 1117 (emphasis added) (quotation omitted). Accordingly, the court

should have limited any subject-matter waiver to documents that actually reflect the contents of the Consultant Reports (*i.e.*, the matter "actually disclosed"). Documents that merely reference the reports as part of a broader ongoing discussion about iRhythm's ██████████████ should not also be ensnared.

Limiting the subject matter of the waiver follows from this Court's prior decisions. For example, in affirming a district court's limited subject-matter waiver, this Court cited with approval cases in which a disclosure of two pages of a report did not warrant disclosing the entire report. *United States v. Mendelsohn*, 896 F.2d 1183, 1189 (9th Cir. 1990). And in another case, this Court found that the district court "correctly ruled that [a party's] waiver with respect to information disclosed to the auditor did not constitute waiver as to all communications concerning the hoped for tax deferral" because that would cover more than the "matter actually disclosed." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (quotation omitted). So too here. Any subject-matter waiver should be limited to documents that actually reflect the Consultant Reports' content.

In short, there is no support for finding that allowing access to three ██████████████████ reports to the sole employee in charge of ████████ ██████████████ waives *all* privileges generally "related" to or "concerning" those disclosed documents, as the district court held. *See* Ex. 12 at 7-10. Alternatively, if

19

such a broad subject-matter waiver does result, then that is all the more reason to question the initial finding of waiver.

*Second*, the sweeping finding of waiver is thoroughly unmoored from the "fairness principle" that "animates the concept of subject matter waiver." *Sanmina*, 968 F.3d at 1117. As explained, iRhythm needed to allow Catalano to access the reports so she could perform her job and not suffer what could constitute unlawful retaliation. *See supra* 13-18. Even if the Court finds that such conduct could waive work-product protections over the Consultant Reports themselves, holding that the *same* conduct also justifies a sweeping subject-matter-waiver of the *separate* attorney-client privilege is antithetical to fairness.

*Third*, the district court did not make the findings necessary to support a blanket waiver of additional documents covered by the work-product protections. Additional findings would be necessary because "opinion work product is discoverable by [subject matter] waiver only where 'mental impressions are at issue in a case and the need for the material is compelling.'" *Tremblay v. OpenAI, Inc.*, 2024 WL 3748003, at *2-3 (N.D. Cal. Aug. 8, 2024) (quoting *Sanmina*, 968 F.3d at 1124-25) (finding subject-matter waiver did not extend to opinion work product).

*Finally*, the Government did not state what documents it thought were related to the Consultant Reports until its reply brief, depriving iRhythm of a chance to respond to that claim on a document-by-document basis. *Compare* Ex. 1, *with* Ex.

11.  At a minimum, a remand is needed for the district court to evaluate whether each document sought does in fact have enough relation to the Consultant Reports so as to fall within a subject-matter waiver and whether redactions are appropriate.

*      *      *

Because iRhythm is likely to succeed on appeal and, at a minimum, has a substantial case, the first factor favors a stay.

### B.      iRhythm Will Suffer Irreparable Harm Absent A Stay

If iRhythm is forced to turn over privileged documents to the Government, it will be irreparably harmed.  *Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Ariz.*, 881 F.2d 1486, 1490 (9th Cir. 1989) ("If Admiral is required to produce a privileged statement, it will suffer immediate, irreparable harm."); *Hernandez v. Tanninen*, 604 F.3d 1095, 1101 (9th Cir. 2010) (same for work-product protections); *see also In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 175 (4th Cir. 2019) (holding and collecting cases holding that turning over privileged documents would work irreparable harm); *Connaught Labs., Inc. v. SmithKline Beecham P.L.C.*, 165 F.3d 1368, 1370 (Fed. Cir. 1999) ("[P]rivileges, such as attorney-client or work product . . . would be irreparably harmed if the information in question were released prior to an appeal.").

Notably, revealing the assertedly protected/privileged material itself constitutes the irreparable harm.  *See, e.g.*, *In re Perrigo Co.*, 128 F.3d 430, 437 (6th

Cir. 1997); *see Maness v. Meyers*, 419 U.S. 449, 460 (1975); *In re Search Warrant Issued June 13, 2019*, 942 F.3d at 175. That is so for two reasons. First, as the Supreme Court has noted, appellate courts cannot "'unring the bell' once [privileged] information has been released." *Maness*, 419 U.S. at 460; *see also In re Ford Motor Co.*, 110 F.3d 954, 962-64 (3d Cir. 1997) ("Appeal after final judgment cannot remedy the breach in confidentiality occasioned by erroneous disclosure of protected materials. . . . [T]he cat is already out of the bag. . . . [T]here is no way to unscramble the egg scrambled by the disclosure . . . ."). Second, the "privilege operates to prevent the disclosure itself." *In re Lott*, 424 F.3d 446, 451 (6th Cir. 2005). So "[m]andatory disclosure of the communications is the exact harm the privilege is meant to guard against." *Id.*

For each of these reasons, a stay is the only means of protecting against looming irreparable harm to iRhythm.

## C.    The Government Will Suffer No Injury From A Stay

On the other hand, the Government faces no harm from a stay. Having requested and received nearly half a million documents, the Government cannot persuasively claim that its investigation will be prejudiced by pausing the production of discrete reports concerning discrete subject matter that is not even defined or mentioned in the subpoena. *See* Ex. 8 at ¶ 4. Further, the Government was silent on this issue for over six months after the parties' December 2023 conferral before

raising it again. *Id.* at ¶ 11. Thereafter, the Government asked for over two months to file its reply. *Id.* at ¶ 16; Ex. 9. This sluggish course of proceeding is telltale proof that no prejudice would result from a stay. Certainly, any theoretical harm from a modest pause would be vastly outweighed by the irreparable harm iRhythm otherwise faces. *See, e.g.*, *In re Lott*, 139 F. App'x 658, 663 (6th Cir. 2005) (per curiam) ("It is difficult to see how the harm that would be caused to the State by a stay could outweigh the important interests of Lott, the legal system, and the public interest in resolving this question."). And iRhythm consents herein to any reasonable proposal the Government may make to expedite the appeal and thereby minimize the duration of the requested stay.

### D.    The Public Interest Favors A Stay

The public interest would also be served by a stay. The district court's order threatens to put companies in an impossible bind and effectively force them—lest they commit a massive "waiver" of core protections otherwise applicable—to discriminate against whistleblowers who belong in a control group. As iRhythm explained, *see supra* pp. 13-18, companies that attempt in good faith to ███████ ███ raised by potential whistleblowers should not be forced to choose between waiving work-product protections and opening themselves up to claims of whistleblower retaliation.

In these circumstances, enforcing the order without the benefit of appellate review would disserve the public interest. More broadly, preserving effective appellate review of orders enforcing administrative subpoenas is important and valuable for the broader public. As explained, iRhythm is entitled to *de novo* review of the ruling below. The administrative subpoena power "is not self-enforcing," and, when an administrative "subpoena is resisted," the Government "must seek judicial enforcement." *Reich v. Mont. Sulphur & Chem. Co.*, 32 F.3d 440, 444 (9th Cir. 1994). Appellate review is a key component of such "judicial enforcement" and the public interest benefits from enabling it to proceed meaningfully.

## II.    THE COURT SHOULD ENTER AN ADMINISTRATIVE STAY

This Court should also enter an administrative stay to preserve the status quo while it considers the motion for stay pending appeal. *Nat'l Urb. League v. Ross*, 977 F.3d 698, 702 (9th Cir. 2020); *see United States v. Texas*, 144 S. Ct. 797, 798-99 (2024) (Barrett, J., concurring in denial of applications to vacate stay). The relevant status quo is the time immediately preceding the issuance of the order in question. *See Al Otro Lado v. Wolf*, 945 F.3d 1223, 1224 (9th Cir. 2019). Here, before the district court's order, iRhythm was properly withholding the Consultant Reports and related documents from the Government. A temporary administrative stay would preserve that status quo while the Court considers the larger stay request in an orderly fashion.

DATED:  June 16, 2025                Respectfully submitted,

                                     /s/ Derek L. Shaffer
Kristin N. Tahler                    Derek L. Shaffer
QUINN EMANUEL URQUHART &             QUINN EMANUEL URQUHART &
    SULLIVAN, LLP                        SULLIVAN, LLP
865 South Figueroa Street, 10th Floor   1300 I Street NW, Suite 900
Los Angeles, California 90017        Washington, D.C. 20005
(213) 443-3000                       (202) 538-8000

                                     Nicholas J. Caluda
                                     QUINN EMANUEL URQUHART &
                                         SULLIVAN, LLP
                                     700 Louisiana Street, Suite 3900
                                     Houston, TX 77002
                                     (713) 221-7000

*Attorney for Respondent-Appellant iRhythm Technologies, Inc.*

25

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2) and 9th Cir. Rule 27-1(d).  This document is proportionally spaced and, not counting the items excluded from the length by Federal Rules of Appellate Procedure 27(a)(2)(B) and 32(f), contains 5,574 words which when divided by 280 does not exceed the 20-page limit of 9th Cir. R. 27-1(d) as calculated under 9th Cir. R. 32-3.

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rules of Appellate Procedure 32(a)(6). This document has been prepared using Microsoft Word in 14-point Times New Roman font.

DATED: June 16, 2025

By */s/ Derek L. Shaffer* _____
    Derek L. Shaffer
    *Attorney for Respondent-Appellant*
    *iRhythm Technologies, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Derek L. Shaffer, a member of the Bar of this Court, hereby certify that I caused the below listed documents to be filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.  I also certify that I cause the below listed documents to be served on counsel for the Government via email at the below listed address.  Counsel for the Government has consented to service via email.

### Documents Served

- Form 16. Circuit Rule 27-3 Certificate for Emergency Motion

- Appellant's Motion to Seal Portions of Emergency Motion and Exhibits

- Emergency Motion Under Circuit Rule 27-3 For A Stay Pending Appeal and For An Immediate Administrative Stay

- Declaration of Kristin N. Tahler in Support of Appellant's Emergency Motion Under Circuit Rule 27-3 For A Stay Pending Appeal and For An Immediate Administrative Stay

- Exhibit 1 to the Declaration of Kristin N. Tahler

- Exhibit 2 to the Declaration of Kristin N. Tahler

- Exhibit 3 to the Declaration of Kristin N. Tahler

- Exhibit 4 to the Declaration of Kristin N. Tahler

- Exhibit 5 to the Declaration of Kristin N. Tahler

- Exhibit 6 to the Declaration of Kristin N. Tahler

- Exhibit 7 to the Declaration of Kristin N. Tahler

- Exhibit 8 to the Declaration of Kristin N. Tahler

- Exhibit 9 to the Declaration of Kristin N. Tahler

- Exhibit 10 to the Declaration of Kristin N. Tahler

- Exhibit 11 to the Declaration of Kristin N. Tahler

- Exhibit 12 to the Declaration of Kristin N. Tahler

- Exhibit 13 to the Declaration of Kristin N. Tahler

- Exhibit 14 to the Declaration of Kristin N. Tahler

- Exhibit 15 to the Declaration of Kristin N. Tahler

**Served On**

Max J. Goldman
Trial Attorney, Civil Division
United States Department of Justice
450 5th Street, N.W.
Washington, DC 20530
Phone: (202) 353-7664
Email: max.j.goldman@usdoj.gov

DATED: June 16, 2025

By /s/ Derek L. Shaffer
Derek L. Shaffer
*Attorney for Respondent-Appellant*
*iRhythm Technologies, Inc.*

28